## 59147. CLINTON v. NATIONAL INDEMNITY COMPANY.

SUBMITTED JANUARY 11, 1980 — DECIDED FEBRUARY 15, 1980 —

*William D. Sparks,* for appellant.
*J. Clinton Sumner, Jr.,* for appellee.

DEEN, Chief Judge.

1. The sole question is whether no-fault coverage obtains under the above stated facts. Code § 56-3407b (b) affords coverage for *accidental bodily injury* sustained by one *occupying* the owner's *motor vehicle.* Code § 56-3407b (c) affords coverage for *such injury* resulting from *being struck* by the owner's *motor vehicle* while a pedestrian. (Italicized words are those needing construction or which have been given a statutory definition under Code § 56-3402b.) As used in Chapter 56-34 a motor vehicle is a vehicle with more than three wheels required to be registered under the Georgia laws for power driven motor vehicles designed primarily for operation on public streets and highways. The truck was accordingly a motor vehicle and it was insured. "Accidental bodily injury" includes a bodily injury arising "out of the operation, maintenance or use of a motor vehicle" which is accidental as to the person claiming the no-fault benefits. "Operation, maintenance or use of a motor vehicle" means "operation, maintenance or use of a motor vehicle as a vehicle." Code § 56-3402b (a) (c) (h). "Vehicle" is not defined in the Act but Black's Law Dictionary, 4th Ed. citing Moffitt v. State Automobile Ins. Assn., defines *vehicle* as that "in or on which a person or thing is or may be carried from one place to another, especially along the ground . . . any moving support or container fitted or used for the conveyance of bulky objects; a means of conveyance." Road scrapers and road graders have been held to be vehicles. Peterson v. King County (Wash.) 90

P2d 729; People v. Pakchoian (Cal.) 250 P2d 767. The Moffitt case involved a haygrinder. Also held to be a vehicle was an antique dismantled tractor (State v. Johnston (Id.) 105 NW2d 700 (1960)); a caterpillar tractor (Commercial Standard Ins. Co. v. McKinney (Tex.) 114 SW2d 338, 340); a house trailer placed on blocks and used as a room (Clark v. Vitz (Tex.) 190 SW2d 736). We cannot hold that this vehicle, which is indeed a motor vehicle and which is designed for the use on public roads for carrying persons or things (here a pump and water supply) ceases to be such a vehicle because it has come to a stop and because the motor, which is running, has been linked through a gear shift with the pump rather than with the wheels. The case is similar to General Acc. Fire & Life Assur. Corp. v. Hanley Oil Co. (Mass.) 72 NE2d 1 (1947), a suit based on a liability clause agreeing to pay the legal liability of the insured for damages to property "caused by accident and arising out of the ownership, maintenance or use of the motor vehicle." In that case the truck involved was used for the delivery of oil to residential users by means of an outside fill pipe leading to the basement. By means of a mechanism with which the truck was equipped oil was pumped through the hose into the cellar tank, which overflowed and eventually set the house on fire. Liability was affirmed because "oil was misdelivered by use of the pump, which was part of the equipment of the truck."

In the present case water was delivered by use of the pump which was a part of the equipment of the fire truck. Not only that, the truck itself had to have a running motor (although it was not in motion) in order to deliver the water. It was a motor vehicle, and it was being used as a vehicle, at the time of the accident. Liability is not at issue here. The plaintiff, accordingly, sustained an accidental bodily injury within the meaning of the statute.

2. However, such accidental injury must have been sustained either while the plaintiff was occupying the motor vehicle or while, as a pedestrian, he was struck by it. "Occupying" means being in or on the motor vehicle or engaged in the immediate act of entering or alighting from it. Code § 56-3402b (i). The plaintiff here had actually arrived at the scene of the fire in his own car and

had not entered the fire truck, except to get up on the backboard plate, loosen the hose nozzle, pull the hose off, and go around to the back of the burning mobile home with it. He is thus barred from recovery under Code § 56-3407b.

3. Nor can we say that he was injured by being *struck by the motor vehicle* while a pedestrian, under Code § 56-3407b (c). The most that could be said here is that in this case, as in the Hanley Oil Company case the pump, cargo (oil or water) and hose were part of the equipment of the motor vehicle, as held in that case, but there loading and unloading were by definition a part of the use of the vehicle, while here "use of a motor vehicle" specifically excludes any conduct in the course of loading and unloading the vehicle unless the injured party is actually in or upon the vehicle at the time. Code § 56-3402b. It was the release of water from its container in the fire truck which exerted the pressure as it was being unloaded through the medium of the pump, and the change in acceleration of the pump which apparently caused the injuries. Technically speaking, all of this must be considered as an accidental injury resulting from the unloading of the fire truck of its water cargo rather than as an act of being struck by the insured vehicle.

The trial court did not err in entering up judgment in favor of the insurer.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*