**SOUTHERN GUARANTY INSURANCE COMPANY**

v.

**Steve J. MORRIS.**

**Civ. A. No. 82-39.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 4, 1982.

Robert M. Darroch, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for plaintiff.

W. Larue Boyce, Jr., Decatur, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

Plaintiff Southern Guaranty Insurance Company ("SG") sold Defendant Morris an

automobile insurance policy that provided no-fault coverage of $5,000. In 1981, Morris suffered an injury that exhausted his no-fault coverage. He then demanded that SG provide additional benefits, under the theory of *Jones v. State Farm Mutual Automobile Insurance Co.,* 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed as improvidently granted,* 248 Ga. 46, 280 S.E.2d 837 (1981). SG brought this action for a declaratory judgment that it is not liable to Morris for benefits beyond the $5,000 it has paid him. This action is before the Court on cross motions for summary judgment.

The Court finds the following material facts to be undisputed: Morris filled out an SG application for automobile insurance policy on or about November 11, 1980. The application specified no-fault coverage of $5,000, and SG therefore issued a policy that provided such coverage. This policy was in effect on September 28, 1981.

On September 27, 1981, Morris and some friends were in Florida on a pleasure trip.[1] Morris' vehicle, a Chevrolet C10 truck, broke down near Panama City. After trying unsuccessfully to diagnose the problem, Morris and his friends towed the truck to Dothan, Alabama, where a mechanic told them that the transmission governor was broken. They then towed the truck to a Chevrolet dealership in Eufaula, Alabama, arriving there on the morning of September 28. At some point, Morris and his friends had removed the truck's drive shaft and universal joint for purposes of towing the truck; they stored the universal joint behind the front seat, and the drive shaft in the back of the truck.

At the Eufaula dealership, Morris and his friends assisted a mechanic in positioning the truck on a hydraulic lift. Morris explained the problem, and the mechanic raised the truck on the lift and repaired it. Morris handed him some tools while he did the repair, and intended to assist him with the reinstallation of the drive shaft by holding it up while the mechanic reconnected it. When the transmission was fixed, the mechanic asked Morris and his friends to get the universal joint and drive shaft out of the truck so he could reinstall them. At this point, the lift was about two feet off the ground. Morris leaned into the cab of the truck to remove the universal joint from behind the seat. As he did so, the mechanic lowered the lift, which crushed Morris' left foot. At the moment he suffered the injury, Morris was "half way in the cab and half way out." Deposition of Steve J. Morris at 38.

Morris later filed a claim with SG under the no-fault provisions of his policy. SG paid him the entire $5,000 provided by his policy, but apparently his medical expenses and lost wages exceed this coverage. On November 9, 1981, his lawyer wrote SG and requested Morris' coverage be increased retroactively to $50,000, citing *Jones.* See Exhibit B to Complaint. SG responded by filing this action.

On the basis of these facts, SG contends that it is entitled to summary judgment for several reasons. Morris contends that he has accepted the "continuing offer" discussed in *Jones,* and *Jones* mandates summary judgment in *his* favor.

This is one of hundreds of cases filed in this Court in the wake of *Jones.* It differs from the other cases, however, because of the unusual manner in which Morris was injured; SG contends that this type of injury does not entitle Morris to no-fault benefits under Georgia law. If this is true, then the Court can avoid entering the *Jones* morass in this particular case. Therefore, the Court will begin by considering the scope of no-fault coverage under the no-fault law.

The relevant portion of Ga.Code Ann. § 56–3407b(a) requires an insurer to pay no-fault benefits for "accidental bodily injury sustained ... by the insured ... while occupying any motor vehicle." Ga.Code

---

1. The facts contained in this paragraph and the one that follows are taken from the testimony of Morris in his deposition. For the purposes of SG's summary judgment motion, the Court is taking them as true. *See Clemons v. Dougherty County,* 684 F.2d 1365 (11th Cir.1982), at 1369; *United States v. Hangar One, Inc.,* 563 F.2d 1155, 1157 (5th Cir.1977).

Ann. § 56–3402b(c) defines "accidental bodily injury" as "bodily injury . . . arising out of the operation, maintenance or use of a motor vehicle. . . ." Ga.Code Ann. § 56–3402b(h) defines "operation, maintenance or use of a motor vehicle" as "operation, maintenance or use of a motor vehicle as a vehicle," and expressly excludes from the definition "conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles." Ga.Code Ann. § 56–3402b(i) defines "occupying" as "to be in or upon a motor vehicle or in the immediate act of entering into or alighting from the motor vehicle."

SG contends that the injuries suffered by Morris did not "arise out of the operation, maintenance or use of a motor vehicle," for two independent reasons. First, SG argues that the repair of an inoperable vehicle, while its engine is not running, does not qualify as the "operation, maintenance or use" of a motor vehicle. Second, SG contends that Morris was injured "in the course of a business of repairing, servicing or otherwise maintaining motor vehicles," and so the statute expressly excludes his injuries from its coverage.

█ The second argument is easily dismissed. No Georgia court has yet interpreted the statutory exclusion from no-fault coverage of "conduct in the course of a business of repairing, servicing or otherwise maintaining motor vehicles." Georgia courts have interpreted the phrase "operation, maintenance or use of a motor vehicle" on several occasions, however, and almost always apply it expansively. *See* discussion below. The Court believes that a Georgia court would hold that the legislature intended the "conduct in the course of a business of repairing" exclusion to apply only to injuries suffered by persons employed in the automobile repair business. Morris was not so employed, of course. While the fact that he rendered limited assistance to the mechanic is troublesome, the Court does not believe that a Georgia court would deprive Morris of the protection of the no-fault statute for this reason.

SG's argument that the statute does not cover injuries suffered during the repair of an inoperable vehicle is more interesting. In support of this argument, SG relies on *Leverette v. Aetna Casualty & Surety Co.,* 157 Ga.App. 175, 276 S.E.2d 859 (1981). In *Leverette,* the Georgia Court of Appeals held that an insured who stood on his truck to pick plums was not engaged in the "use" of his truck within the meaning of Ga.Code Ann. §§ 56–3402b(c) and (h), and so the injuries he suffered when he fell were not covered by the no-fault statute. While it provides some guidance to the Court, *Leverette* does not dispose of this case for two reasons. First, it is not the "use" of Morris' truck that is at issue here, but its "maintenance"; certainly there is a closer connection between Morris' injuries and the "maintenance" of his truck than between Leverette's injuries and the "use" of his. Second, in several other opinions, the Georgia Court of Appeals has interpreted the phrase "use of a motor vehicle" quite broadly. *See Jones v. Transamerica Insurance Co.,* 154 Ga.App. 408, 268 S.E.2d 444 (1980) (dicta indicating that death of insured from carbon monoxide poisoning while in garage with car with engine running is an injury resulting from "use of a motor vehicle" within meaning of section 56–3402b); *Clinton v. National Indemnity Co.,* 153 Ga.App. 491, 265 S.E.2d 841 (1980) (dicta indicating that injury suffered by firefighter from thrashing fire hose is an injury resulting from "use" of the fire truck within the meaning of section 56–3402b); *Southeastern Fidelity Insurance Co. v. Stevens,* 142 Ga.App. 562, 236 S.E.2d 550 (1977) (death of passenger in truck from discharge of his own firearm when truck left smooth road for unpaved road is an injury resulting from "use or operation" of a motor vehicle within meaning of clause in policy); *Hartford Accident & Indemnity Co. v. Booker,* 140 Ga.App. 3, 230 S.E.2d 70 (1976) (injury suffered by garbage collector while 30 feet from truck while going to collect garbage is an injury resulting from the "use" of the garbage truck within the meaning of the uninsured motorist statute, Ga.Code Ann. § 56–407.1). In each of these cases, and in

*Leverette,* the Court of Appeals has indicated that the question of whether an injury results from the "use" of a vehicle turns on the facts of each individual case.[2] The Court's task in such cases is to consider the facts and determine "whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the [motor vehicle as a] vehicle." *Leverette,* 157 Ga.App. at 176, 276 S.E.2d 859, quoting *Stevens,* 142 Ga.App. at 409, 236 S.E.2d 550. Presumably in this case the Court must determine whether Morris' injuries originated from, had their origin in, grew out of or flowed from the maintenance of his vehicle as a motor vehicle.

█ It is clear that they did. The truck was on the lift to be repaired so it would properly function as a motor vehicle. At the moment he suffered his injury, Morris was reaching into cab of the truck at the mechanic's request, to retrieve the universal joint from the place where Morris had placed it for safekeeping; the mechanic intended to reinstall it in order to make the truck operable as a motor vehicle. The insured in *Leverette* was using his truck as a stepladder; Morris was doing his best to make his truck into a truck. The Court concludes that Morris' injuries did result from the "maintenance of a motor vehicle" within the meaning of sections 56–3402b and 56–3407b; thus they are "accidental bodily injuries" within the meaning of those sections.

Morris has one more hurdle to overcome, however, before he establishes that his injuries are covered by the no-fault law. Ga. Code Ann. § 56–3407b(a) requires the payment of benefits only for "accidental bodily injuries sustained . . . while occupying any motor vehicle."[3] Indeed, on two occasions the Georgia Court of Appeals has flatly stated that the no-fault law "covers accidental injury while occupying a motor vehicle." *Parker v. Atlanta Casualty Co.,* 157 Ga.App. 539, 539, 278 S.E.2d 119 (1981). *Accord, Transamerica,* 154 Ga.App. at 409, 268 S.E.2d 444.[4] In another case, the Court of Appeals has denied relief to a firefighter injured by a writhing fire hose because he was *not* "occupying" the fire truck when he was injured. *Clinton,* 153 Ga.App. at 493, 265 S.E.2d 841.[5]

Morris was not "occupying" his truck at the time he was injured. He was neither "in or upon" his truck, nor was he "in the immediate act of entering into or alighting from" it. Ga.Code Ann. § 56–3402b(i). He was merely leaning in, reaching for the universal joint stored behind the seat. This is not a case in which the claimant was injured "as he got out" of his vehicle. *See Parker,* 157 Ga.App. at 539, 278 S.E.2d 119. Morris was never in his truck, nor was he

**2.** This is not to say, of course, that such a case cannot be decided on a summary judgment motion if the facts are undisputed, as they are here.

**3.** The full text of Ga.Code Ann. § 56–3407b(a) provides:

> The insurer . . . shall pay basic no-fault benefits without regard to fault for economic loss resulting from:
> (a) accidental bodily injury sustained within the United States of America, its Territories or Possessions, or Canada by the insured and spouse and children if residing in the insured's household and the relatives of either if residents of the insured's household while occupying any motor vehicle, or while a pedestrian as the result of being struck by a motor vehicle.

It is clear that Morris does not qualify as a "pedestrian" who was "struck by a motor vehicle"; therefore, his injuries are covered only if he was "occupying any motor vehicle."

**4.** The Court notes that on at least one occasion the Court of Appeals has granted relief under the no-fault law to a person who was not "occupying" the insured vehicle at the time of injury. *Georgia Farm Bureau Mutual Insurance Co. v. Nelson,* 153 Ga.App. 623, 266 S.E.2d 299 (1980). *See also Transamerica,* 154 Ga.App. at 400, 268 S.E.2d 444 (same result contemplated, but in dicta). In neither *Nelson* nor *Transamerica,* however, did the Court discuss the "occupying" requirement. As a result, these cases are far less useful as precedent than is *Clinton,* in which the Court specifically considered the "occupying" requirement.

**5.** In *Clinton,* the Court of Appeals was applying subsection (b) of Ga.Code Ann. § 56–3407b, which describes the scope of no-fault coverage afforded to persons not related to the vehicle owner. This case, of course, involves subsection (a), because the insured himself is claiming under the policy. Both subsections contain the "occupying" requirement.

entering into it when he was hurt. Consequently his injuries are not covered by the no-fault law.

The Court GRANTS Plaintiff Southern Guaranty Insurance Company's Motion for Summary Judgment, and DENIES the Motion for Summary Judgment of Defendant Morris. The Court DIRECTS the Clerk to enter final judgment for Plaintiff Southern Guaranty Insurance Company on the main claim, and on the counterclaims, which are necessarily foreclosed by this Order.