68300. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. JONES et al.
(322 SE2d 296)

CARLEY, Judge.
On January 13, 1982, Jeffrey Atcheson and three others, one of whom was appellee-plaintiff, decided to take advantage of a light snowfall for recreational purposes. They drove to a nearby parking lot in a pickup truck owned by Atcheson. The four individuals attached an inverted abandoned automobile hood to a forty-foot rope and tied the other end of the rope to the rear bumper of the pickup truck. Atcheson then drove the pickup truck while the others took turns sitting on the inverted hood and were towed around the snow and ice-covered parking lot. At first, appellee merely stood to the side and took pictures while the others were towed. When appellee subsequently took his first ride on the inverted hood, he careened into a telephone pole and was injured.

At the time of appellee's injury, the pickup truck was covered by an automobile insurance policy issued to Atcheson by appellant-defendant insurer. Appellee made a claim for medical expenses and lost wages under the no-fault provisions of Atcheson's automobile insurance policy. When appellant denied coverage, appellee initiated the instant litigation. Cross-motions for summary judgment were filed on the issue of coverage. The trial court granted appellee's motion and denied appellant's motion. Appellant appeals.

1. Appellee asserts, and the trial court found, that no-fault benefits are afforded by virtue of OCGA § 33-34-7 (2), the general language of which is tracked in the insurance policy involved. That statute provides for payment of no-fault benefits for the economic loss resulting from an *"[a]ccidental bodily injury* sustained by any other person while *occupying* the owner's *motor vehicle. . . ."* (Emphasis supplied.) "Accidental bodily injury" is defined, in pertinent part, as "bodily injury . . . arising out of the operation, maintenance, or use of a motor vehicle. . . ." OCGA § 33-34-2 (1). " 'Occupying' means to be in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle." OCGA § 33-34-2 (8). "Motor vehicle" is defined, in pertinent part, as a "vehicle having more than three load-bearing wheels . . . designed primarily for operation upon the public streets, roads, and highways. . . . The term includes a trailer drawn by or attached to such a vehicle." OCGA § 33-34-2 (6). Thus, appellee is entitled to recover no-fault benefits if he sustained bodily injuries arising out of the operation, maintenance or use of a "motor vehicle" which he was "occupying."

The first issue to be resolved is whether the trial court correctly ruled that appellee's bodily injuries arose out of the "operation" or "use" of a motor vehicle, there being no contention that the injuries arose out of the maintenance of the pickup truck. " 'Case law indicates that the injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something distinctly remote. [Cit.] Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the [motor vehicle as a] vehicle.' " *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 564 (1) (236 SE2d 550) (1977).

In the instant case, it is clear that appellee's injuries "flowed from" the "use" of the truck. Appellee was injured while being towed on the inverted hood which was tied to the vehicle, which in turn was being driven around the parking lot. The injuries were intrinsically related to and would not have occurred but for the use of the vehicle. *Ga. Farm Bureau Mut. Ins. Co. v. Troupe*, 154 Ga. App. 108, 109 (267 SE2d 834) (1980); *Jones v. Transamerica Ins. Co.*, 154 Ga. App. 408, 409 (268 SE2d 444) (1980); *Franklin v. Southern Guaranty Ins. Co.*,

160 Ga. App. 279 (287 SE2d 274) (1981). See also *Clinton v. Nat. Indem. Co.*, 153 Ga. App. 491 (1) (265 SE2d 841) (1980); Smith v. Community Service Ins. Co., 319 NW2d 358 (114 Mich. App. 431) (1982).

2. However, appellee must also have sustained bodily injuries while "occupying" a "motor vehicle." "No-fault liability to persons outside the family unit is limited to personal injury to persons *in [or upon]* the insured car or a pedestrian struck by the insured car in this state. [Cit.]" (Emphasis supplied.) *Standard Guaranty Ins. Co. v. Davis*, 145 Ga. App. 147, 149 (243 SE2d 531) (1978). See also *Parker v. Atlanta Cas. Co.*, 157 Ga. App. 539 (278 SE2d 119) (1981).

Appellee first contends that he sustained injuries while he was actually "occupying" the pickup truck. This court has had few opportunities to construe "occupying" as defined in OCGA § 33-34-2 (8). In *Clinton v. Nat. Indem. Co.*, 153 Ga. App. 491, supra, it was held that a fireman who had been injured while fighting a fire at some distance from the motor vehicle was not injured while "occupying" the fire truck. Likewise, in the case at bar, appellee was not "occupying" the pickup truck when he sustained his injuries. The facts are undisputed that when appellee struck the telephone pole, he was seated on the inverted hood located approximately forty feet from the insured's pickup truck.

Appellee contends, however, that *Clinton* is distinguishable. He asserts that the plaintiff in *Clinton* was not entitled to no-fault benefits because he had not arrived at the scene of the fire in the insured fire truck, whereas appellee *had* actually ridden in the insured pickup truck to the parking lot where he was subsequently injured. Although, unlike the plaintiff in *Clinton*, appellee had earlier ridden in the insured vehicle and had thus certainly "occupied" it at that time, this fact does not take the instant case outside the holding in *Clinton*. The bodily injury must have been sustained "while occupying" the motor vehicle. In the instant case, as in *Clinton*, appellee's injuries were not sustained *while* he was "in or upon" the truck or *while* he was engaged in the "immediate act of entering into or alighting from" it. Instead, he was injured some thirty minutes later, after he had been engaged in activity totally unrelated to his earlier occupancy of the vehicle, to wit, taking pictures. In other words, appellee clearly abandoned his prior occupancy of the vehicle. Under these facts, appellee was not "occupying" the truck at the time he sustained his injuries at the end of a forty-foot rope.

We need not decide in the instant case the precise degree of physical contact with or relationship to the insured motor vehicle which is necessary in order for one to be "in or upon" that vehicle. When called upon to construe this phrase, other courts have adopted widely varied definitions. See Annot., 42 ALR3rd 501 (1972). But

under even the most expansive and liberal interpretation, the evidence in the instant case clearly establishes that appellee was not in physical contact with or even within the immediate vicinity of the insured pickup truck. See generally Ross v. Protective Indem. Co., 62 A2d 340 (Conn. 1948). Compare Wolf v. American Cas. Co., 118 NE2d 777 (Ill. App. 1954); Henderson v. Hawkeye-Security Ins. Co., 106 NW2d 86 (Iowa 1960).

3. Appellee asserts that even if he was not actually occupying the pickup truck at the time of his injury, he was still occupying a "motor vehicle" by virtue of the fact that he was in or upon a "trailer," which is included in the definition of motor vehicle. OCGA § 33-34-2 (6).

The term "trailer" is not defined in the Georgia Motor Vehicle Accident Reparations Act. "'One of the traditional functions of courts is to interpret and construe legislative enactments. Determining the intent of the legislative body by defining the ordinary or technical meaning of the terms it has used is commonplace. [Cits.]' [Cit.] 'Absent an adopted definition, the courts must determine the intended meaning.' [Cit.]. . . . 'Where the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached thereto, the court cannot deny the language its ordinary, usual signification; nor is the court required to give the language a forced and strained interpretation. [Cits.]' [Cits.]" *Crook v. State*, 156 Ga. App. 756, 757-758 (275 SE2d 794) (1980).

To the extent that the word "trailer" employed in OCGA § 33-34-2 (6) is otherwise undefined, this court may look to all laws in pari materia to ascertain the intent of the legislature. See generally *Pate v. Turner County*, 162 Ga. App. 463 (291 SE2d 400) (1982). OCGA § 40-1-1 (63) defines "trailer" for purposes of general employment in Title 40, Motor Vehicles and Traffic. That statute defines "trailer" as "every vehicle with or without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle." Under such a definition, it is clear that an inverted automobile hood is not a "trailer." It is simply not a "vehicle designed for carrying persons or property and for being drawn by a motor vehicle." Appellee was not in or upon a "trailer," and therefore was not occupying an insured "motor vehicle" at the time he sustained his injuries.

4. Appellee was "occupying" neither the actual pickup truck nor a trailer at the time he was injured. Therefore, under the terms of the insurance policy, appellee may not recover no-fault benefits. The trial court erred in granting summary judgment in favor of appellee and in failing to grant summary judgment in favor of appellant.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 5, 1984 —
REHEARING DENIED SEPTEMBER 20, 1984

*Joseph C. Parker*, for appellant.
*Jeffrey B. Talley, Thomas D. Harper, Russell D. Waldon*, for appellees.