## 70146. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. HOLMES et al.
### (333 SE2d 917)

POPE, Judge.

On May 22, 1980 Mrs. Anderson filed suit against State Farm Mutual Automobile Insurance Company to recover survivor's benefits under the personal injury provisions of her husband's automobile insurance policy. Mr. Anderson drowned on March 21, 1980 after he drove his car onto a flooded road, and, realizing he could not get through, left the car in an attempt to reach safety and was swept away by the water current. Mrs. Anderson died on September 9, 1981, and the executors of her estate were substituted as parties plaintiff.

At the close of all the evidence at trial, State Farm's motion for a directed verdict was denied. The jury returned a verdict for plaintiffs in the amount of $50,000 in PIP benefits, $17,780 in pre-judgment interest, $100,000 in punitive damages and $15,000 in attorney fees. The trial court entered a judgment of $182,780 for plaintiffs, and State Farm appeals.

1. State Farm asserts that the trial court erred in overruling its

motion for directed verdict because plaintiffs' claim does not fall within the coverage of OCGA § 33-34-7 of the Georgia Motor Vehicle Accident Reparations Act since Mr. Anderson was not "occupying" his car at the time of injury. OCGA § 33-34-7 (a) (1) provides for the payment of benefits for economic loss resulting from "[a]ccidental bodily injury sustained . . . by the insured . . . while occupying any motor vehicle. . . ." OCGA § 33-34-2 (8) defines "occupying" for purposes of this chapter as being "in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle." As it is uncontested that Mr. Anderson was neither "upon" the auto nor "in the immediate act of entering" it, the determinative issues here are whether he was either "in" his car or "in the immediate act of . . . alighting from" it at the time of death.

It is undisputed that Mr. Anderson was occupying his car at the time he encountered the hazardous flood waters which swept his car from the roadway and partially onto the shoulder some twelve to eighteen inches below, leaving the car immobilized and tilted. From the shoulder of the road, the drop was approximately twelve to fifteen feet. This was filled with flood waters which rose to three or four feet above the road. Officer Commers testified that he was patrolling the area at the time of the accident. When he arrived at the scene, a truck was attempting to back out of the flood waters from the side opposite to that entered by Mr. Anderson. Officer Commers was notified that Mr. Anderson's car had stopped in the water. Thinking that he could wade in halfway to meet Mr. Anderson, Officer Commers attempted to reach him but stopped due to the heavy current. He saw Mr. Anderson struggle against the waters to open the car door and then exit the vehicle. The force of the water pushed him against his car. When he reached the front of his car, he let go of it and began to walk through the flood waters toward Officer Commers. He made it three to six feet when he was swept away. He tried to stay afloat by using swimming movements, but he disappeared from sight approximately one hundred yards away. Mr. Anderson drowned and his body was recovered a few days later when the flood waters receded. Officer Commers also testified that because Mr. Anderson's car was already partially off the roadway and onto the three-feet-wide shoulder, the force of the flowing water could have swept the vehicle away into deep water.

Although Mr. Anderson was not ejected from his car, we find the reasoning of the opinion in *Partridge v. Southeastern Fid. Ins. Co.*, 172 Ga. App. 466 (323 SE2d 676) (1984), to be persuasive and applicable to these facts. The court in *Partridge*, supra at 467, recognized that "occupancy has been extended beyond physical presence in the vehicle in voluntary self-removal or alighting cases (see Annot., 42 ALR3d 501 (1972)). . . ." Thereafter, the court held that one "re-

mains an occupant of the car from which he is ejected until he is able to remove himself to a neutral zone or is removed to a neutral zone. . . ." Id. at 468. Further, the time interval between ejectment and such removal is not material. As in *Partridge*, Mr. Anderson encountered a perilous situation while driving and, thus, "occupying" his car. The ensuing emergency provided him a choice: staying "in" the car and being swept away, in which case he would certainly qualify as an "occupant," or "alighting" from the car in an attempt to reach safety. While it is clear that Mr. Anderson did not remain "in" his car, we view his efforts to escape the peril at hand by alighting from the car and heading for safety — that "neutral zone" described in *Partridge* — as one unbroken chain of events constituting the immediate act of alighting from the car. That he was able to move to the end of the car and a small number of feet beyond is immaterial. As in *Partridge*, he remained an occupant of the car until he could reach a neutral zone or could be removed to one. Therefore, plaintiffs were not precluded from recovery of no-fault benefits and State Farm was not entitled to directed verdict as a matter of law.

2. We have carefully reviewed State Farm's remaining enumerations of error and find them to be without merit.

*Judgment affirmed. Banke, C. J., Carley, Sognier, and Benham, JJ., concur. Deen, P. J., and Birdsong, P. J., concur in part and dissent in part. Beasley, J., dissents. McMurray, P. J., disqualified.*

DEEN, Presiding Judge, dissenting in part.

"L'homme absurde est celui qui ne change jamais. (The absurd man is he who never changes.)" *Wynn v. State*, 127 Ga. App. 463, 466 (194 SE2d 124) (1972).

The writer originally concurred in the majority opinion. When the dissent was written I left the majority and joined the dissent. On Motion for Rehearing I am again switching and rejoining the majority opinion, except I would reverse the award of $100,000 in punitive damages and $15,000 attorney fees based on bad faith in failing to pay the claim when received.

As to bad faith " '*ordinarily* these are questions for the jury, if there is no evidence of such frivolous or unfounded refusal to pay, *or if the question of liability is a close one*, the court for the furtherance of justice should see to it that a verdict that illegally carries a penalty for bad faith is not allowed to stand. [Cit.]' " (Emphasis supplied.) *Georgia Farm Bureau Mut. Ins. Co. v. Matthews*, 149 Ga. App. 350 (254 SE2d 413) (1979). See also *GEICO v. Presley*, 174 Ga. App. 562 (330 SE2d 779) (1985). Since I have taken three different positions in this case, and since we have a majority opinion and a dissenting opinion, it is suggested that the question of liability here is a "close one." For that reason, the award for punitive damages and attorney fees

was inappropriate.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

BEASLEY, Judge, dissenting.

1. Was Anderson "in" his car at the time of injury? Anderson drove his car onto a flooded road. The car slipped and went off the shoulder; the rear axle rested on the pavement's edge, immobilizing the car. Anderson got out and walked along the side of the vehicle, wading through rapidly flowing water reaching nearly his waist. He stopped at the front of the car for a few minutes and then walked about three to six feet away from the car, lost his footing and was carried away by the current. Thus, Anderson was not physically "in" his car at the time of the accident, but was several feet away when he lost his footing. And, although Anderson was in the area of his car at the time of injury, this is insufficient to fall within the statutory definition of "occupying." OCGA § 33-34-2 (8) does not define "occupying" as "in or adjacent thereto or nearby." To interpret it as such would be to import meaning beyond the plain language of the statute.

Was Anderson "in the immediate act of . . . alighting from" his car at the time of injury? No. He had completed that act; he had alighted.

What is meant by the term "immediate" as found in OCGA § 33-34-2 (8)? " ' "One of the traditional functions of courts is to interpret and construe legislative enactments. Determining the intent of the legislative body by defining the ordinary or technical meaning of the terms it has used is commonplace. [Cits.]" [Cit.] "Absent an adopted definition, the courts must determine the intended meaning." [Cit.] . . . "Where the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached thereto, the court cannot deny the language its ordinary, usual signification; nor is the court required to give the language a forced and strained interpretation. [Cits.]" ' " *Ga. Farm Bureau Mut. Ins. Co. v. Jones*, 172 Ga. App. 164, 167 (3) (322 SE2d 296) (1984).

The word "immediate" is such a common, ordinary word. It is defined in Webster's Dictionary as "not separate in space or time . . . without delay; instant." Black's Law Dictionary gives a similar definition: "Present; at once; without delay; not deferred by any interval of time."

Nor can it be said that Anderson was "alighting from" his vehicle. Anderson had safely completed his act of exiting when he proceeded forward away from his car minutes later, deliberately abandoning it and proceeding to travel by foot. It was this latter action which resulted in his demise. It was not undertaken "without delay" in alighting from the vehicle, nor was it part of the "alighting from"

action or activity.

In accordance with the above definitions, I conclude that, as a matter of law, Anderson's steps which resulted in his loss of footing did not occur while in the immediate act of alighting from the vehicle. Hence, because the immediacy and alighting requirements were not met, Anderson was not an "occupant." This result is in line with the approach to "occupancy" taken in *Cole v. Allstate Ins. Co.*, 173 Ga. App. 454 (326 SE2d 817) (1985); *Ga. Farm Bureau Mut. Ins. Co. v. Jones*, supra; *Kelley v. Integon Indem. Corp.*, 253 Ga. 269 (320 SE2d 526) (1984); *Clinton v. Nat. Indem. Co.*, 153 Ga. App. 491, 493 (2) (265 SE2d 841) (1980); *Jones v. Continental Ins. Co.*, 169 Ga. App. 153 (312 SE2d 173) (1983).

This case differs substantially from *Partridge v. Southeastern Fidelity Ins. Co.*, 172 Ga. App. 466 (323 SE2d 676) (1984). The insured in *Partridge* was involuntarily thrown into oncoming traffic and hit by a car, when the car in which he was riding struck a telephone pole. The court concluded that "one in the position of appellant's decedent remains an occupant of the car from which he is ejected until he is able to remove himself to a neutral zone or is removed to a neutral zone . . . ." Id. at 467-468. Partridge did not remove himself from the car; he was passively projected. Anderson, on the other hand, deliberately removed himself; he chose to exit. We must keep in mind that we are not determining whether he acted wisely in alighting, but instead whether what happened to him thereafter constituted an insured event.

Even if Anderson's vacating the car was in effect an "ejectment," *Partridge* is still inapposite. Anderson was not injured upon "ejectment"; he had already safely vacated the car. Anderson's injury stemmed from a subsequent act, his attempt to distance himself from the car. This decision to proceed away from the car was voluntary and entirely separate from his stepping out of the car. He was not, for example, swept away as he exited the car.

The majority concludes that Anderson's death resulted from an unbroken flow of a series of events set in motion when his car became disabled, and that Anderson's acts of stepping out of the car and his later steps away from it were all part of a continuous act of alighting from the auto in an emergency situation. Although there are no Georgia cases which accept this "unbroken chain of events" measurement, plaintiffs cited several cases from other jurisdictions in support. I find these cases unpersuasive; none were controlled by an immediacy requirement imposed by statute as is the case here. Also, the cases noted in 42 ALR3d 501, §§ 8 & 9 which found in favor of insured were not controlled by an "immediacy" requirement imposed by statute. In fact, they did not revolve around statutory interpretation at all. These cases dealt with issues of interpretation of insurance policy

provisions. The case of *U. S. F. & G. v. Daly*, 384 S2d 1350, 1351 (Fla. App. 1980), cited by plaintiff and noted by this court in *Partridge*, supra at 467, did involve a question of statutory interpretation. But the Florida insurance provisions at issue there did not have the "immediacy" language as found in OCGA § 33-34-2 (8). Furthermore, *Daly's* language which appears to extend occupancy in "voluntary self-removal or alighting cases" is simply dicta, as *Daly* involved an involuntary ejection.

To adopt a "chain of events" exception to the immediately-alighting-from requirement, which reaches to the "neutral zone" for all emergency situations, is to elasticize the legislative act. I believe we are without authority to manufacture this expansion.

The present case is far different from those cases cited by plaintiffs which involve matters of construction of insurance contracts rather than statutory interpretation, as is at issue here. Different rules apply. For example, in those contract construction cases, where the language of a contact is ambiguous, it must be construed in favor of the insured. *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438, 441 (287 SE2d 226) (1981). No such rule applies where the language of a statute is called into question.

Where there is no conflict in the evidence as to any material issue of fact and a verdict is demanded as a matter of law, it is error for the trial court to fail to direct a verdict. *Marriott Corp. v. American Academy of Psychotherapists*, 157 Ga. App. 497 (1) (277 SE2d 785) (1981). Because Anderson was not "occupying" the vehicle at the time of injury, as necessary for recovery under OCGA § 33-34-7, I would conclude that a verdict was demanded as a matter of law for State Farm.

2. In view of the foregoing, all other enumerations would be moot. Because of the effect of the majority decision, however, I am compelled to address punitive damages and attorney fees. The question of liability is at the least a close one here, and the insurer, as a matter of law, should not have to risk being assessed these penalties for denying a claim which presents a genuine legal question of statutory construction which must be resolved by the courts. *Ga. Farm Bureau Mut. Ins. Co. v. Matthews*, 149 Ga. App. 350, 352 (254 SE2d 413) (1979); *Perry v. Intl. Indem. Co.*, 169 Ga. App. 818, 820 (6) (315 SE2d 13) (1984); *American Interstate Ins. Co. v. Revis*, 156 Ga. App. 204, 205 (2) (274 SE2d 586) (1980). Paying a claim without legal liability is as much an evil as refusing to pay a valid claim. The courts should guard against both. By allowing the punitive damages under OCGA § 33-34-6 (c) and the attorney fees under OCGA § 33-34-6 (b) to stand, the majority in effect holds that the jury was authorized to find that the factual circumstances of Anderson's death so clearly came within the "occupying" embrace of the law that the carrier's

refusal to pay the claim constituted lack of good faith. The position the insurer maintained from the beginning, however, was that the legal definition of "occupying," which was legislatively extended to include "in the immediate act of . . . alighting from," did not cover the occurrence here. This defense was not unreasonable, nor can it be said that it was a departure from the fair, honest, and objective dealings which I understand insurers are required by the statute to exhibit in their relationship with an insured who makes a claim. Here there was a legitimate question of coverage, and legal liability was fairly debatable, all as illustrated by the majority's further construction of the statute's meaning beyond that which has been articulated to date as being the law of this state. Another troublesome aspect is that the trial court interpreted the term "alighting from" differently than does the majority here, and so instructed the jury. It speaks of "a reasonable time" and "a reasonable geographic perimeter" and "the process of the use of the vehicle" and "conduct unrelated to the use of the vehicle for transportation." The majority expressly rejects the time interval and construes "in the immediate act of alighting from" to extend to that point which is a neutral zone in a perilous emergency and to thereby cover the activity which constitutes an unbroken chain of events until that location is reached by the vehicle's occupant.

I am authorized to state that Presiding Judge Deen joins in Division 2 of this dissent.

DECIDED JULY 16, 1985 —
REHEARING DENIED JULY 31, 1985 — 

*Frank M. Gleason, John W. Davis, Jr.*, for appellant.
*Larry D. Ruskaup*, for appellees.