A97A0843. UNITED SERVICES AUTOMOBILE ASSOCIATION v. CARROLL.

(486 SE2d 613)

ELDRIDGE, Judge.

On August 26, 1992, appellee, Elsie C. Carroll, a 75-year-old

woman, stopped at a Unocal service station in Decatur, DeKalb County, Georgia to get gasoline. Appellee parked her car several feet from the concrete island with the gasoline pumps. Appellee pumped her own gas. After appellee completed her purchase, and opened the car door to get inside, she saw a truck backing towards her. Appellee was afraid that she would be struck by the truck before she could get safely into her car; she began to back away from the truck along the side of her vehicle until she reached the rear of it; appellee then attempted to step onto the concrete island, while watching the approach of the truck. The truck struck appellee's car on the rear driver's side and, simultaneously, she fell backward into the gas pump and was injured. Appellee is not sure whether she fell because her car struck her after it had been hit by the truck, or because she tripped on the gasoline hose while attempting to get out of the way of the collision.

Appellant, United Services Automobile Association, was appellee's automobile insurer, which policy had a medical coverage provision; appellee submitted a medical claim for her injuries which appellant refused to pay. After repeated demands to pay which were all refused, appellee sued appellant.

At trial, appellant attempted to impeach appellee by presenting prior inconsistent statements, made either to its claims adjuster shortly after the injury or on deposition, that her fall was caused by tripping over the gasoline hose prior to any attempt to enter her vehicle. Andrew Perles, the appellant's claim representative who investigated appellee's claim, testified that, based on the statement this 75-year-old elderly woman gave to him shortly after her injury, he did not believe that she had a claim. While appellee told him about various eyewitnesses, Perles believed that they had not seen anything, because appellee stated that the vehicles were between them; Perles never talked to any alleged eyewitnesses as part of his investigation. Two weeks later, appellee requested that appellant reconsider her claim for medical costs; Perles did so with his supervisor and house counsel, all of whom agreed that the claim was outside the medical coverage provision of the policy based upon the facts.

Appellee retained counsel and renewed her claim two years later. At that time Ms. Dora Jean Compton, an adjuster for appellant, reviewed the claim again with her manager and house counsel, and they again concluded that the claim fell outside the medical payments coverage. Appellee then filed suit against appellant.

On September 24, 1996, a jury returned a verdict for appellee against appellant. Judgment was entered on October 4, 1996, awarding appellee $22,190.55 in medical expenses, $21,000 in attorney fees, and $3,159.26 in litigation expenses.

1. The first enumeration of error is that the trial court erred in

denying appellant's motion for directed verdict on the issue of whether or not appellee was an occupant of her car at the time she was injured.

Under "PART B–MEDICAL PAYMENTS COVERAGE," the policy reads: "[w]e will pay reasonable expenses of bodily injury: 1. Caused by accident; and, 2. Sustained by a covered person. 'Covered Person' as used in this Part means: 1. You or any family member: a) while occupying; or b) as a pedestrian when struck by; a motor vehicle designed for use mainly on public roads or a trailer of any type." "Occupying" is defined in the policy as follows: "DEFINITIONS . . . 'Occupying' means in, upon, getting in, on, out or off."

*Major v. Allstate Ins. Co.*, 207 Ga. App. 805, 806 (1) (429 SE2d 172) (1993), upon which appellant relies, is distinguishable from the case sub judice. Such case arose under OCGA § 33-7-11 (b) (1) (B) as to the definition of "insured" under the statute and under the policy; the issue was who was an "insured" for the purpose of uninsured motorist coverage. Even though the policy language was broader than the statutorily mandated language, the plaintiff still did not qualify. Under the facts of that case, the plaintiff intended to get into the car but had not commenced to do so by the actual physical act of opening the car door as in the case sub judice. Also in contrast, the case sub judice involves medical coverage for the named insured and comes under OCGA § 33-7-9, which mandates the statutory minimum requirements of vehicle insurance, i.e., "Vehicle insurance is insurance against loss . . . from any hazard or cause, . . . or expense resulting from or incident to ownership . . . or use of any such vehicle . . . against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle . . . and provisions of medical . . . benefits to injured persons . . . when issued as an incidental coverage with or supplemental to liability insurance."

The holding in *State Farm &c. Ins. Co. v. Holmes*, 175 Ga. App. 655, 656-657 (333 SE2d 917) (1985), is persuasive in interpreting what "occupancy" means within the mandate of OCGA § 33-7-9, although the case was decided under former OCGA § 33-34-2 (8). In the case sub judice, appellee had commenced the physical act of entering the car by opening the door and had physical contact with the vehicle when she was forced to abandon the entry by the sudden peril. "The court in *Partridge* [*v. Southeastern Fid. Ins. Co.*, 172 Ga. App. 466, 467 (323 SE2d 676) (1984)], recognized that 'occupancy has been extended beyond physical presence in the vehicle in voluntary self-removal or alighting cases [cit.]. . . .' Thereafter, the court held that one 'remains an occupant of the car from which [she] is ejected until [she] is able to remove [herself] to a neutral zone or is removed

to a neutral zone. . . .' [Cit.] Further, the time interval between ejectment and such removal is not material. As in *Partridge*, [appellee] encountered a perilous situation while driving and, thus, [was] 'occupying' [her] car. The ensuing emergency provided [her] a choice: [entering into] the car and being [hit], in which case [she] would certainly qualify as an 'occupant,' or [abandoning her attempt to enter] the car in an attempt to reach safety. While it is clear that [appellee] did not [continue the attempt to enter her] car, we view [her] efforts to escape the peril at hand by [abandoning the attempt to enter] the car and heading for safety — that 'neutral zone' described in *Partridge* — as one unbroken chain of events constituting the immediate act of [entering] the car. That [she] was [unable to complete the process of entering the car and was forced to retreat] a small number of feet beyond is immaterial. As in *Partridge*, [she] remained an occupant of the car until [she] could reach a neutral zone or could be removed to one. Therefore, [appellee was] not precluded from recovery of [medical] benefits and [appellant] was not entitled to directed verdict as a matter of law." *State Farm &c. Ins. Co. v. Holmes,* supra at 656-657.

In addition, whether or not appellee was occupying the car, there existed a material issue of fact as to whether or not appellee was a "pedestrian" who was struck by a vehicle within the policy provisions. There was evidence that appellee was struck either by her own car being knocked into her by the truck or struck by the truck while she stood outside her car, which could make her a "pedestrian" within the policy coverage. See generally *Hardy v. Valley Forge Ins. Co.*, 165 Ga. App. 494, 495 (301 SE2d 671) (1983); *Clinton v. Nat. Indem. Co.*, 153 Ga. App. 491, 494 (3) (265 SE2d 841) (1980).

" '(O)n appeal, we must construe the evidence most strongly to support the jury verdict and the judgment' (*Department of Transp. v. Hillside Motors*, 192 Ga. App. 637, 639 (2) (385 SE2d 746) [(1982)]); likewise, in considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 184 (129 SE2d 408) [(1962)]. The standard for review of a directed verdict and a judgment n.o.v. are the same: 'Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.' *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554) [(1983)]. And, ' "(t)he standard of appellate review of the trial court's denial of a motion for a directed verdict is the 'any evidence' standard." ' *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6)." *Mattox v. MARTA*, 200 Ga. App. 697, 698 (1) (409 SE2d 267) (1991). Thus, we find that the trial court did not err in denying the motion for directed verdict.

2. The second enumeration of error is that the trial court erred in denying appellant's motion for directed verdict on whether or not appellant denied appellee's claim in bad faith.

Under OCGA § 33-4-6, "bad faith" of the insurer means a frivolous and unfounded refusal to pay a claim. *Dixie Constr. Products v. WMH, Inc.*, 179 Ga. App. 658 (347 SE2d 303) (1986). There was no question of law in the case sub judice, because appellee clearly came within the definition of "pedestrian" and also came within the definition of "occupier" of the vehicle. See generally *Brown v. Seaboard Lumber &c. Co.*, 221 Ga. 35 (142 SE2d 842) (1965).

Mr. Perles, the claims examiner, failed to talk to the eyewitnesses and instead relied solely upon the statement of the insured, an injured, elderly woman, because such limited statement, without questions that explored the presence or absence of a factual basis for coverage, seemed to exclude coverage but, in fact, did not rule out coverage. Perles quickly assumed the absence of coverage because he believed that appellee slipped and fell without contact with either her vehicle or the truck; Perles made no attempt to clarify the facts as stated by appellee. Ms. Compton, the claims adjuster for appellant, also failed to talk to eyewitnesses, because she felt the statement of appellee, alone, excluded coverage.

The insurer did not have reasonable grounds to exclude coverage based upon a claim that was not completely investigated. Appellant stubbornly continued to decline to pay, without investigation, even after the commencement of litigation. See *Central Manufacturers Mut. Ins. Co. v. Graham*, 24 Ga. App. 199 (99 SE 434) (1919); see generally *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993); *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355 (3) (395 SE2d 851) (1990).

The trial court did not err in denying the motion for directed verdict in the face of evidence from appellant's employees that no thorough investigation had been made prior to the denial of the claim. See *Pendley v. Pendley*, supra; *Colonial Life &c. Ins. Co. v. McClain*, 150 Ga. App. 883 (258 SE2d 655) (1979); *North British &c. Ins. Co. v. Mercer*, 90 Ga. App. 143 (82 SE2d 41), aff'd, 211 Ga. 161 (84 SE2d 570) (1954).

3. The third enumeration of error is that the trial court erred in charging the jury that appellee remained an occupant of her car until she was able to reach a neutral zone.

Under *State Farm &c. Ins. Co. v. Holmes*, supra, extending *Partridge v. Southeastern Fid. Ins. Co.*, supra, the charge was a correct statement of the law, adjusted to the facts and circumstances of the case.

"A contract of insurance should be strictly construed against the insurer and read in favor of coverage in accordance with the reason-

able expectations of the insured. *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291 (265 SE2d 102) (1980)." *Roland v. Ga. Farm &c. Ins. Co.*, 265 Ga. 776, 778 (462 SE2d 623) (1995).

The trial court did not err in giving the charge.

4. The fourth enumeration of error is that the trial court erred in charging the jury that appellee's policy of automobile insurance must be construed strictly against the insurer.

The policy language deviated from OCGA § 33-7-9 and was ambiguous; therefore, the charge was a correct statement of law. *Roland v. Ga. Farm &c. Ins. Co.*, supra at 778; *Nat. Union Fire Ins. Co. v. Prestige Helicopters*, 217 Ga. App. 375 (457 SE2d 587) (1995).

5. The final enumeration of error is that the trial court erred in allowing the issue of litigation expenses to go to the jury; appellant challenges the trial court's charge to the jury and the form of the verdict thereon.

The appellant timely excepted to the verdict form prior to its submission to the jury. Appellant also excepted to the charge on litigation expenses for bad faith denial of benefits.

OCGA § 33-4-6 specifically provides for "all reasonable attorney's fees for the prosecution of the action against the insurer," when the insurer denies a claim in "bad faith." OCGA § 13-6-11 provides for the recovery of the expenses of litigation, including attorney fees, when the defendant has acted in "bad faith," either during or subsequent to the transaction. However, general penalty provisions under OCGA §§ 13-6-11; 33-4-6; and 51-12-5.1 cannot be recovered where the General Assembly specifically has provided a procedure and a penalty for non-compliance. *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871-872 (2) (310 SE2d 513) (1984). OCGA § 33-4-6 is the exclusive remedy for bad faith denial of benefits so that litigation expenses under OCGA § 13-6-11 are not recoverable. *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (2) (448 SE2d 275) (1994). Therefore, the portion of the judgment awarding expenses of litigation is set aside, and that portion of the judgment is hereby vacated and remanded.

*Judgment affirmed in part and vacated in part. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 9, 1997.

Before Judge Castellani.

*Savell & Williams, John C. Parker, Vincent A. Toreno*, for appellant.

*Alembik, Fine & Callner, Heidi K. Martin, Mark E. Bergeson*, for appellee.