Nancy A. **ADAMS,** Plaintiff,

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA** and **Unumprovident Corporation n/k/a Unum Group,** Defendants.

No. CIVA 406CV–0150–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Sept. 10, 2007.

Pamela Ilene Atkins, Atkins & Associates, Atlanta, GA, for Plaintiff.

Michael Joseph Hannan, III, Thompson, Slagle & Hannan, LLC, Duluth, GA, for Defendants.

### ORDER

HAROLD L. MURPHY, District Judge.

This is civil action alleging breach of contract due to the denial of long-term disability benefits to Plaintiff. This case is before the Court on Defendant UnumPro-

vident Corporation's Motion for Summary Judgment [37] and Motion to Strike [55].

## I. Background

### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *Harris v. Coweta County, Ga.,* 433 F.3d 807, 811 (11th Cir.2005), *rev'd on other grounds,* —— U.S. ——, 127 S.Ct. 1769, 167 L.Ed.2d 686 (U.S.2007). This statement does not represent actual findings of fact. *Jones v. Am. Gen. Life and Acc. Ins. Co.,* 370 F.3d 1065, 1069 n. 1 (11th Cir.2004) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1271 n. 9 (11th Cir.2001)). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

### 1. Parties

Plaintiff Nancy A. Adams is a citizen of the United States and a resident of the State of Georgia residing at 1060 Texas Valley Road, Rome, Georgia. (Compl. ¶ 1; Answer ¶ 2.)

Defendant Unum Life Insurance Company of America ("Unum Life") is a foreign for-profit corporation organized and existing under the laws of the State of Maine and registered and authorized to transact business in the State of Georgia. (Compl. ¶ 2; Answer ¶ 3.)

Defendant Unum Provident Corporation ("UnumProvident")[1] is a foreign for-profit corporation organized and existing under

---

1. The Court observes that Defendant Unum-Provident recently changed its name to Unum Group. (Mem. of Supp. Def. UnumProvident's Mot. Summ. J. at 1. n. 1.) In order to maintain consistency in this case, the Court will continue to refer to the above party as Defendant UnumProvident.

the laws of the State of Tennessee and registered and authorized to transact business in the State of Georgia. (Compl. ¶ 3; Answer ¶ 4.) Defendant UnumProvident is a holding company and is the parent corporation of Defendant Unum Life. (Compl.¶ 3(a); Answer 4(a).)

## 2. Material Facts

As an initial matter, the Court observes that Defendant UnumProvident's Motion for Summary Judgment and Plaintiff's brief in opposition focus on Plaintiff's allegations that Defendant UnumProvident is liable for the alleged wrongful denial of Plaintiff's benefits under the Policy as the alter ego or joint venturer of Defendant Unum Life. The Court therefore also focuses on that issue, and does not consider whether Plaintiff's benefits actually were wrongfully denied.

### a. Merger of UNUM Corporation with Provident Companies, Inc.

On June 30, 1999, UNUM Corporation merged with Provident Companies, Inc., and Provident Companies, Inc. amended its charter to change its name to Unum-Provident Corporation. (Def. UnumProvident's Statement Undisputed Material Fact ("DSMF") ¶ 5; Pl.'s Resp. DSUMF ("PRSMF") ¶ 5.) Defendant UnumProvident is a holding company that is not licensed or authorized to sell insurance in Georgia or any other state or commonwealth. (DSMF ¶ 8; PRSMF ¶ 8.) As a result of the merger, Defendant Unum Life became a wholly-owned subsidiary of Defendant UnumProvident. (Pl.'s Opp'n Mot. Summ. J. Ex. 7 at 2, 6.)

Effective January 1, 2001, Defendant UnumProvident entered into a General Services Agreement ("GSA") to provide Defendant Unum Life with certain ser-

vices. (Stipulation as to General Services Agreement Attach. A ("GSA") at 1.) [2] According to the GSA, Defendants entered into the agreement for the following reasons:

WHEREAS, Recipient operates principally in the life and health insurance business; and

WHEREAS, Provident Companies, Inc. acquired by merger UNUM Corporation and its various subsidiaries and changed its name to UNUMProvident; and

WHEREAS, as a result of such merger, duplicate functions within the separate insurance companies existed, which resulted in certain inefficiencies; and

WHEREAS, employees increasingly were required to work across subsidiary lines to accomplish strategic objectives; and

WHEREAS, employees with specialized skills need to be available to work in various operating subsidiaries of UNUMProvident to most effectively use their talents; and

WHEREAS, in order to improve operations, to utilize personnel and resources more effectively, to better monitor performance in various job functions, and to effectively propose changes to such functions, UNUMProvident has assumed the employ of certain personnel; and

WHEREAS, Recipient desires that UNUMProvident provide the services specified in Appendix A, and such other services as to which the parties may agree from time to time (collectively "Services"); and

---

**2.** The General Services Agreement refers to Defendant Unum Life as "Recipient." (GSA at 1.)

**WHEREAS**, UNUMProvident desires to provide such Services to Recipient;

(*Id.* (emphasis in original).) The GSA also set forth the following duties, relevant part:

### 1. GENERAL DUTIES

1.3 UNUMProvident shall comply with all applicable federal, state, and local laws applicable to it or Recipient in connection with providing services hereunder. In addition, UNUMProvident employees ("Associates") must satisfy those standards established by Recipient, and communicated to UNUMProvident orally or in writing. UNUMProvident warrants that all Services shall be provided promptly and diligently and all work shall be performed in a workmanlike manner in accordance with the industry's customary professional standards and to Recipient's reasonable satisfaction . . . .

1.4 UNUMProvident shall maintain the exclusive right to exercise direction and control over Associates performing Services for Recipient. All decisions as to the identity and number of Associates to be assigned to provide Services on UNUMProvident's behalf to Recipient shall be made in the sole discretion of UNUMProvident. UNUMProvident may reassign Associates to its other clients.

1.5 The performance of the Services by UNUM Provident for Recipient under this Agreement shall in no way impair the absolute control of the business and operations of UNUMProvident or Recipient by their respective Boards of Directors. UNUMProvident shall act hereunder so as to assure the separate operating identity of Recipient. The Services shall at all times be subject to the direction and control of the Board of Directors of Recipient.

. . . . .

### 5. INDEMNIFICATION

5.1 UNUMProvident shall indemnify and hold harmless Recipient from and against any fine, penalty, loss, damage, injury, claim, cost, expense (including reasonable attorneys' fees and other reasonable costs and expenses incident to any suit, action, investigation, claim or proceeding) or other liability (individually and collectively, "Liabilities") to the extent it is finally determined by a court of competent jurisdiction or arbitrator that such Liabilities arise out of any act or omission of UnumProvident in connection with the performance of Services under this Agreement, if such acts or omissions are determined by such court to constitute:

a. the failure of UNUMProvident to perform its obligations under this Agreement;

b. ordinary negligence of UNUMProvident or UNUMProvident's Associates, if such negligence has material adverse consequences to Recipient; or

c. gross negligence or willful misconduct of UNUMProvident or UNUMProvident's Associates (including any dishonest, fraudulent, or criminal acts or omissions, acting alone or in collusion with others).

. . . . .

### 8. INDEPENDENT CONTRACTOR STATUS

The parties agree that UNUMProvident is engaged in an independent business and will perform its obligations under this Agreement as an independent contractor and not as the employee, partner or agent of Recipient; that the Associates performing Services under this Agreement are not employees of Recipient; that UNUMProvident has and hereby retains the right to exercise

full control of and supervision over the performance of UNUMProvident's obligations under this Agreement and full control over the employment, direction, compensation and discharge of all Associates assisting in the performance of such obligations ... and that UNUMProvident will be responsible for UNUMProvident's own acts and those of UNUMProvident's Associates during the performance of UNUMProvident's obligations under this Agreement. Notwithstanding the foregoing, from time to time Recipient may advise UNUMProvident of matters on which Associates shall have authority to act on behalf of Recipient and bind it in dealings with third parties.

(*Id.* at 2, 5–6, 9 ¶¶ 1.4, 1.5, 5, 8 (emphasis in original).)

The services to be provided by Defendant UnumProvident to Defendant Unum Life specified in Appendix A included, in relevant part, the following:

**A. Managerial and Administrative support**

Provide managerial and administrative support functions to Recipient executives including facilities management, general counsel, internal audit, cash management, financial management, actuarial, pricing, and corporate relations.

**1. Facilities Management**

Provide comprehensive facilities management functions ...

**2. General Counsel**

Provide comprehensive legal services including:

. . . . .

- Investigate fraudulent activities (including criminal or non-compliant activities of insureds, policyholders, vendors, or employees)

- Develop policy forms and applications that comply with specification requirements from various departments (i.e. state insurance department, claims department, marketing departments)

- Draft contract language

. . . . .

**3. Internal Audit**

Provide comprehensive internal audit services ...

**4. Cash Management**

Provide comprehensive finance-treasury functions, ...

**5. Financial Management**

Provide comprehensive finance services with respect to operations, ...

**6. Actuarial**

. . . . .

**7. Pricing**

- Building and maintaining liability models for pricing use

- Monitor profitability in products

- Risk management

- Assumption development

- Pricing all existing and new products

- Getting approval by state insurance departments to sell our products in their respective states

- Keeping current with regulatory changes

- Provide input to the product development process

**8. Corporate Relations**

Provide comprehensive corporate relations services ...

## B. Marketing and Product Support

### 1. Client Services

Provide comprehensive client services including:

- Provide customer service, billing, premium collection and accounting, and commission reporting
- Issue applications and policies

. . . . .

### 2. Sales Management

Provide comprehensive sales and marketing services and management, including:

. . . . .

- Participate in prospecting and recruiting new clients (which involves developing and mailing marketing and advertising materials, attending regional and national marketing meetings, updating proposal software, conducting sales calls, building client relationships, and preparing and giving presentations)

. . . . .

- Maintain customer relationships and ensure customer and broker/consultant satisfaction

. . . . .

- Implement new sales

. . . . .

- Create sales illustrations
- Answer agent inquiries
- Develop and mail marketing material
- Organize sales meetings
- Track sales
- Generate management reports
- Advertise through print and media

### 3. Market Development

### a. Market Development

Provide comprehensive marketing services including:

. . . . .

- Design, develop, and implement new product offerings for individual and corporate customers

. . . . .

### 4. Claims

Provide comprehensive claims management services, including:

- Review claims and medical files, determine if claims are payable, maintain and search databases, interview doctors, attorneys, employers, and employees, and process claims for payment
- Answer inquiries (written and oral)
- Develop internal and external monthly reports (such as mortality profit reports, death records, state reports, and management reports)

. . . . .

### 5. Underwriting

Provide comprehensive underwriting functions, including:

### a. Individual Policies

- Determine whether applicant's request for coverage is accepted or rejected
- Determine premiums that should be assessed (based on a review of medical, financial, occupational, avocation and lifestyle information submitted by applicants)
- Determine the level of risk and the rate that a policy should be assigned

### b. Group Policies

- Review proposals and forward them to appropriate issuing agent
- Determine whether to issue policies to applicants (and if so, determine whether to assess a rated premium)
- Assess and renew contracts and policies
- Review medical files and research medical databases on an on-going basis

#### 5. Systems Support

Provide comprehensive systems support . . .

(GSA App. A (emphasis in original).)

#### b. Defendant UnumProvident's Activities After the Merger

Defendant UnumProvident is not licensed or authorized to sell insurance in Georgia, but certain of its subsidiaries, such as Defendant Unum Life, are licensed and authorized to conduct the business of insurance in Georgia. (Aff. of Susan Roth ¶¶ 5–6.) According to Susan Roth, Defendant UnumProvident's Vice President, Corporate Secretary, and Assistant General Counsel, Defendant UnumProvident has never assumed liability for claims against Defendant Unum Life, and Defendant Unum Life has maintained a separate corporate existence from Defendant Unum-Provident, including having separate corporate books and records and a different board of directors. (Roth Aff. ¶¶ 4, 7.)

Defendant UnumProvident made the following statements in its 2000 Annual Report:

UnumProvident combines the resources of three income protection leaders—Provident, Unum and Paul Revere—each with over a century of industry leadership and experience. But Unum-Provident is a new Company, leveraging the best from our predecessor organizations and utilizing our extensive resources to create a model of excellence in the disability insurance industry.

At UnumProvident, we protect incomes when our customers become injured or ill and unable to work, and we provide extensive resources to help them get back to work.

(Pl.'s Opp'n Mot. Summ. J. Ex. 21. at 3.) In the 2000 Annual Report, Defendant Unum-Provident's chairman stated the following, in relevant part, in a letter to Defendant UnumProvident's shareholders, employees, and customers:

During 2000, through the rigorous pursuit of eight major corporate initiatives outlined in this letter, we improved how we plan, what we sell, and how we consult, service and touch our customers and their advisors . . . We introduced several new products which will continue to address the ever-changing needs of our customers. There were three new products, in particular, that received very favorable customer response: Life-Phases, WorkRx and our new Income Series . . . An important aspect of the focus on marketing is improving the level of communications with all of our important constitutes, thereby positioning our organization to build strong, long-term relationships with customers—relationships which go beyond selling products, but emphasize helping them solve their problems well after the sale.

(*Id.* at 4–6.) The 2000 Annual Report also listed group long-term income protection and group long-term care insurance as integrated products offered by Defendant Unum Provident. (*Id.* at 18; *see also id.* Ex. 22 at 4) (Defendant UnumProvident 2003 Annual Report (discussing "our U.S. Group Income Protection results" and "our U.S. Group Income Protection business").)

In its 2003 Form 10–K filed with the United States Securities and Exchange Commission, Defendant UnumProvident described its business strategies as follows, in relevant part: [3].

---

**3.** The "Cautionary Statement Regarding Forward–Looking Statements" section of Defendant UnumProvident's 10K form defines "the Company" as "Defendant UnumProvident Corporation, together with its subsidiaries, unless the context implies otherwise." (Pl.'s Opp'n Mot. Summ. J. Ex. 22. at 13.)

The Company offers a comprehensive portfolio of income protection products and services. These coverage choices, available in the income protection, life and accident, and Colonial market segments, seek to meet the diverse needs of the marketplace. The Company seeks to achieve a competitive advantage by offering group, individual, and voluntary workplace products that can combine with other coverages to provide integrated product solutions for customers. ... the Company offers businesses of all sizes highly competitive benefits to protect the incomes and lifestyles of employees and their families. Income protection solutions include integrated short-term and long-term disability income protection plans with flexible coverage and funding options.

(Pl.'s Opp'n Mot. Summ. J. Ex. 22. at 16.) Defendant UnumProvident explained its liability for those group long-term and short-term income protection products, in relevant part, as follows:

Premiums of group long-term and short-term income protection are generally based on expected claims of a pool of similar risks plus provisions for administrative expenses and profit.

Some cases carry experience rating provisions. Premiums for experience rated group long-term and short-term income protection business are based on the expected experience of the client given their industry group, adjusted for the credibility of the specific claim experience of the client. The Company also offers accounts handled on an administrative services only (ASO) basis, with the responsibility for funding claim payments remaining with the customer.

Profitability of group long-term and short-term income protection is affected by deviations of actual claims experience from expected claims experience, investment returns, persistency, and the ability of the Company to control its administrative expenses. Morbidity is an important factor in income protection claims experience. Also important is the general state of the economy; for example, during a recession the incidence of claims tends to increase under this type of insurance. In addition, case management and rehabilitation activities with regard to claims, along with appropriate pricing and expense control, are important factors contributing to profitability. In general, experience rated income protection coverage for large groups has narrower profit margins and represents less risk to the Company than business of this type sold to small employers because the Company must bear all of the risk of adverse claims experience in small case coverage while larger employers often bear much of this risk themselves.

(*Id.* at 19.)

#### c. Relationship Between Defendants UnumProvident and Unum Life

Based on the record, it appears that, at the time Defendants entered into the GSA, the signatory for Defendant UnumProvident, Robert C. Greving, and the signatory for Unum Life, J. Harold Chandler, were both executive officers of Defendant UnumProvident. (*Compare* GSA at 11 (showing names and signatures), *with* Pl.'s Ex. 21 at 20 (UnumProvident Corporation 2000 Annual Report listing executive officers).) Additionally, there are interlocking officers and directors between Defendant UnumProvident and Defendant Unum Life, and Defendants' officers and directors are virtually identical. (Compl.¶ 3(c)(*l*); Answer ¶ 4(c).)

Defendant UnumProvident considers the income of Defendant Unum Life as its own, and controls and dominates the finances and business practices of Defendant Unum Life. (Compl.¶ 3(c)(vii)-(viii);

Answer ¶ 4(c).) Defendant UnumProvident substantially controls the operations of Defendant Unum Life and issues checks on behalf of Defendant Unum Life. (Compl.¶ 3(c)(v)-(vi); Answer ¶ 4(c).)

Defendant Unum Life had no employees for claims handling functions at the time Plaintiff's claim for benefits was denied, and Defendant UnumProvident employees made all the claim decisions associated with Plaintiff's claim. (Compl.¶ 3(d)(v)-(viii); Answer ¶ 4(d).)

 In December 2006, Defendant Unum Life received a $3 million capital contribution from Defendant UnumProvident as a result of normal ongoing business processes. (Pl.'s Opp'n Mot. Summ. J. Ex. 7 at 2–3 ¶ 10.B, D.)[4] According to Ms. Roth, Defendant Unum Life has sufficient assets in the form of reserves in order to satisfy any judgment against Defendant Unum Life in this case. (Roth Aff. ¶ 10.)[5]

### d. Defendants' Communications with Plaintiff

Plaintiff's claims relate to Defendant Unum Life's Long Term Disability Insurance Policy number 502147002 and Group Term Life and Accidental Death and Dismemberment Insurance Policy number 502147 (the "Policy"). (Compl.¶ 4.) Plaintiff participated in the Policy as a teacher for a state funded school. (DSMF ¶ 1; PRSMF ¶ 1.)

Defendant UnumProvident's name appeared prominently on the first page of the Policy issued by Defendant Unum Life. (Pl.'s Opp'n Mot. Summ. J. Ex. 15.) Defendant Unum Provident's name also appeared prominently at the top of Defendant Unum Life's correspondence with Plaintiff regarding her disability claim. (Id. Exs. 2–5, 16.)

In an August 13, 2003, letter, Defendant Unum Life notified Plaintiff that it received her claim. (Pl.'s Opp'n Mot. Summ. J. Ex. 16.) Defendant Unum Provident's name appeared prominently on the letter. (See id.) Enclosed in the letter was a Customer Service Commitment card. (Id. Ex. 16; Aff. of Pl. Concerning UnumProvident's Service Commitment ("Pl.'s Aff. I") ¶ 5.) The Customer Service Commitment card indicated that it came from Defendant UnumProvident and Defendant Unum Life's name did not appear anywhere on the card. (Pl.'s Aff. I ¶ 8.) The card contained the following statements: "Dear Customer: UnumProvident's Benefits Center is committed to serving you well while providing income protection insurance and professional return-to-work assistance," and "We understand that you may be experiencing one of the most difficult times in your life and pledge to you

4. Plaintiff contends that the above contribution was made in anticipation of obligations Defendant Unum Life faced as a result of prior claim mishandling and regulatory actions. (PRSMF ¶ 12.) The Court observes, however, that the evidence cited by Plaintiff does not clearly support Plaintiff's assumption. Consequently, the Court does not accept Plaintiff's contention.

5. Plaintiff objects to the above statement as merely a conclusory opinion unsupported by any factual showing and as immaterial. (PRSMF ¶ 12.) The Court may consider affidavit testimony on summary judgment and, indeed, is bound to accept statements based on personal knowledge as true, unless the context demonstrates otherwise. See Fed. R.Civ.P. 56(c); Stewart v. Booker T. Washington Ins., 232 F.3d 844, 849 (11th Cir.2000). Here, Ms. Roth is the Vice President, Corporate Secretary, and Assistant General Counsel of Defendant Unum Provident and averred that her testimony is based on her personal knowledge. Plaintiff has not provided evidence rebutting Ms. Roth's testimony regarding Defendant Unum Life's solvency or showing that Ms. Roth is not qualified to make that determination. The Court therefore finds Plaintiff's objection invalid.

our empathy and understanding." (*Id.* ¶¶ 10, 13.) The card also contained a picture of a woman under which appeared the following: "To the customer I work with, I am UNUMProvident and I take that responsibility very seriously." (*Id.* ¶ 12.)

In connection with her disability claim, Plaintiff received Defendant UnumProvident's 2003 booklet "Your Income Protection Coverage, What to expect if you need to *submit a claim*." (Pl.'s Opp'n Mot. Summ. J. Ex. 23 (emphasis in original); Aff. of Pl. Concerning UnumProvident Brochure ("Pl.'s Aff. II") ¶ 4.) Defendant Unum Life's name does not appear in the booklet. (*See* Pl.'s Opp'n Mot. Summ. J. Ex. 23; Pl.'s Aff. II ¶ 5.) The following statements appeared in the booklet:

> UnumProvident recognizes that a disabling illness or injury creates emotional, physical and financial challenges. We want you to feel confident in knowing you have income protection insurance from UnumProvident, the leading provider of this specialty coverage.[6]
>
> Your UnumProvident benefits are intended to help support you and your family while you are unable to work. Our commitment to you however, extends beyond the amount on your benefit check. Our unique claims management process is based on the types of injuries or illnesses you might encounter and on the expected length of your time away from work. Our Customer Care professionals work on dedicated teams,—short-term, maternity, cancer, cardiac, orthopedic, psychiatric and general medical—and have been trained in all facets of the conditions handled by their team. Your Customer Care team will work hard to understand your specific needs and help you in any way that

is appropriate as you move through the stages of disability and on to recovery. (Pl.'s Opp'n Mot. Summ. J. Ex. 23 at 2.)

## B. Procedural Background

On June 30, 2006, Plaintiff filed the instant Complaint. (Docket Entry No. 1.) Plaintiff alleges the following four counts: (1) a claim pursuant to O.C.G.A. § 9–2–20 for breach of contract; (2) a claim pursuant to O.C.G.A. § 33–4–6 for bad faith breach of contract; (3) a claim that Defendant UnumProvident engaged in a joint venture with Defendant Unum Life and is the alter ego of Defendant Unum Life; and (4) a claim pursuant to O.C.G.A. §§ 9–15–14, 13–6–11, and 33–4–6 for attorney's fees and litigation expenses.

On August 28, 2006, Defendants filed their Answer in this case. (Docket Entry No. 9.)

On June 6, 2007, Defendant UnumProvident filed its Motion for Summary Judgment. (Docket Entry No. 37.)

On August 20, 2007, Defendant UnumProvident filed its Motion to Strike exhibits 11, 18, 19, and 20 from Plaintiff's response to its Motion for Summary Judgment. (Docket Entry No. 55.)

The Court finds that the briefing process is complete and that the instant Motions are ripe for resolution by the Court.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears "the burden of demonstrating the satisfaction of this standard,

---

6. The following footnote, in relevant part, appeared after the above statement: "UnumProvident represents multiple insuring subsidiaries of UnumProvident Corporation ....." (Pl.'s Opp'n Mot. Summ. J. Ex. 23 at 2.)

by presenting 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir.2005) (quoting Fed.R.Civ.P. 56(c), *cert. denied,* 546 U.S. 872, 126 S.Ct. 377, 163 L.Ed.2d 164 (2005)). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 786 (11th Cir.2005).

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Harris,* 433 F.3d at 811. The Court also must "construe 'all reasonable doubts about the facts in favor of the non-movant.'" *Michael Linet, Inc. v. Vill. of Wellington, Fla.,* 408 F.3d 757, 761 (11th Cir.2005) (quoting *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)). Further, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir.2003). Finally, the Court does not make factual determinations. *Jones,* 370 F.3d at 1069 n. 1 (citing *Wooden,* 247 F.3d at 1271 n. 9).

Using this standard, the Court evaluates Defendant UnumProvident's Motion for Summary Judgment.

## III. Defendant UnumProvident's Motion for Summary Judgment

Defendant UnumProvident argues that this case is both factually and legally similar to *Perry v. Unum Life Insurance Co. of America,* 353 F.Supp.2d 1237 (N.D.Ga. 2005), and that the Court should follow *Perry* and dismiss all of Plaintiff's claims against Defendant UnumProvident as a matter of law. Defendant UnumProvident also argues that Defendant Unum Life is the only necessary party to this case. Defendant UnumProvident contends that Defendant Unum Life is the insurer and has sufficient assets to satisfy Plaintiff's claims or any judgment against Defendant Unum Life. Defendant UnumProvident also contends that it is not an insurer and is not engaged in a joint venture with Defendant Unum Life which would in any way infer liability against Defendant UnumProvident in this case. In support of ita assertion, Defendant UnumProvident cites Ms. Roth's Affidavit in which she avers that Defendant UnumProvident is not an insurer and that each Defendant maintained a separate corporate existence.[7] Defendant UnumProvident also argues that Plaintiff may not have double recovery against Defendants. Defendant UnumProvident contends that Plaintiff has not demonstrated what possible additional damages she can recover from it, rather than Defendant Unum Life, and thus has failed to show an essential element of her claim—damages.

Plaintiff argues that Georgia law recognizes that a parent corporation and a subsidiary may be involved in a joint venture or other agency relationship, thus making both entities liable for a breach of contract or a tort. Plaintiff contends that admis-

---

**7.** The Court observes that Defendant Unum-Provident's brief addresses the issue of its alleged liability in one section and does not separate its arguments with regard to Plaintiff's distinct claims. (*See* Mem. of Supp. Def. UnumProvident's Mot. Summ. J.) The Court therefore summarizes Defendant UnumProvident's arguments regarding all of Plaintiff's claims above, with the exception of Plaintiff's claim for attorney's fees and litigation expenses, which is summarized *infra* Part III.E.

sions in Defendant UnumProvident's Answer establish the existence of a joint venture or other agency relationship between Defendants. The Court examines Plaintiff's allegations that Defendant UnumProvident is liable to Plaintiff for breach of contract and bad faith breach of contract as a joint venturer or alter ego of Defendant Unum Life in turn below.

### A. Plaintiff's Claim that Defendant UnumProvident is the Alter Ego of or a Joint Venturer with Defendant Unum Life

■ Plaintiff argues that genuine factual issues remain as to whether Defendant UnumProvident is the alter ego of or a joint venturer with Defendant Unum Life. Plaintiff asserts that, under Georgia law, the question of whether the corporate veil should be pierced generally is for the jury unless there is no evidence sufficient to justify disregarding the corporate form. Plaintiff asserts that whether a joint venture or partnership exists is a question of fact based on the actual conduct of the parties. Plaintiff argues that genuine factual issues remain as to whether Defendants are engaged in a joint venture or partnership in the insurance business because the facts suggest that Defendants engaged in a joint undertaking with rights of mutual control and profit sharing. Plaintiff contends that the GSA demonstrates Defendants engaged in a joint undertaking and that Defendant UnumProvident is engaged in the insurance business through the many services it performed for Defendant Unum Life.

As an initial matter, the Court observes that there is no independent cause of action in Georgia for "engaging in a joint venture" or acting as an "alter ego." Nevertheless, the Court addresses Plaintiff's claims that Defendant UnumProvident is the alter ego of or a joint venturer with Defendant Unum Life, as those claims relate to Plaintiff's breach of contract claims discussed *infra* Part III.B.

■ Under Georgia law, "the cardinal rule of corporate law is that a corporation possess a legal existence separate and apart from that of its officers and shareholders." *Amason v. Whitehead,* 186 Ga. App. 320, 321–22, 367 S.E.2d 107, 108 (1988). Upon equitable principles, the legal entity of a corporation may be disregarded; however, "great caution should be exercised by the court in doing so." *Id.*

■ The Georgia Court of Appeals explained in *Amason* that, "in order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice." 186 Ga.App. at 321, 367 S.E.2d at 108. "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Id.* (internal quotations omitted), *see also Paul v. Destito,* 250 Ga.App. 631, 550 S.E.2d 739 (2001).

In *Johnson v. Lipton,* 254 Ga. 326, 328 S.E.2d 533 (1985), the Georgia Supreme Court reconciled two separate lines of cases on the issue of disregarding the corporate form. 254 Ga. at 327, 328 S.E.2d at 534. Both lines of cases allowed a plaintiff to reach behind the corporation and seek a judgment against the stockholders where the corporate assets were disposed of and the corporation itself was insolvent. The *Johnson* court explained that, as a *precondition* to disregarding the corporate form, *"there must be insolvency* on the part of the corporation in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim." *Id.* (emphasis added).

The *Perry* court dealt with essentially the same issues and fact pattern as in the instant suit. In *Perry*, the plaintiff alleged that UnumProvident and Unum Life wrongfully denied her disability benefits under her policy with Unum Life. 353 F.Supp.2d at 1238–39. The plaintiff alleged that breach of contract claims against UnumProvident and Unum Life, and alleged that the two engaged in a joint venture and that UnumProvident was the alter ego of Unum Life. *Id.* The plaintiff, however, did not allege that Unum Life had insufficient assets to satisfy any claim she might successfully maintain for breach of the insurance policy. *Id.* at 1240. The *Perry* court held that, pursuant to *Johnson*, the plaintiff could not pierce the corporate veil and hold UnumProvident liable under an alter ego theory for the alleged breach of her policy with Unum Life. *Id.*

Plaintiff cites *Kissun v. Humana, Inc.*, 267 Ga. 419, 479 S.E.2d 751 (1997), for the principle that, even if there is insufficient evidence to pierce the corporate veil, a parent corporation could be held liable where the subsidiary or the parent acted as an the alter ego of the other or where they acted as joint venturers. In *Kissun*, the Georgia Supreme Court explained that, under the alter ego doctrine, equitable principles are used to disregard the separate legal existence possessed by a corporation and its subsidiary where the corporation serves as a mere alter ego or business conduit of the other. 267 Ga. at 419–20, 479 S.E.2d at 752. The *Kissun* court also explained that the theory of joint venturers arises where the two parties combine their property or labor with rights of mutual control in a joint undertaking for profit, so as to render all joint venturers liable for the negligence of others. *Id.*

Here, as in *Perry*, Plaintiff has not shown that Defendant Unum Life is insolvent or cannot meet any judgment she may obtain against Defendant Unum Life, thus requiring Plaintiff to seek recourse from its parent company, Defendant UnumProvident. Defendant UnumProvident's Vice President, Corporate Secretary, and Assistant General Counsel avers that Defendant Unum Life has sufficient assets to satisfy any judgment in this case. Plaintiff has failed to rebut that testimony.

■ Additionally, the *Kissun* case does not overrule or alter the rule that, in order to disregard the corporate form because a corporation is a mere alter ego or business conduit of a person, the corporation should have been used as a subterfuge so that to observe it would work an injustice. As discussed above, Plaintiff has not shown that the Defendants' corporate forms are being used to work an injustice and prevent Plaintiff from satisfying any judgment she may obtain in this case. Similarly, the theory of joint venturers is not applicable to this contract case. As explained in *Kissun*, joint venturer liability holds all joint venturers liable for the negligence of the others. Plaintiff has alleged claims for breach of contract and bad faith breach of contract, and therefore joint venturer liability is not applicable to her claims.

The Court concludes that Plaintiff has not shown that Defendant Unum Life is insolvent, or that Defendants' corporate forms will defeat justice or allow Defendant Unum Life to evade its alleged contractual responsibility. The Court therefore finds that Plaintiff has not met the precondition required for the Court to disregard Defendant Unum Life's corporate form and hold Defendant UnumProvident liable for any judgment in this case. Consequently, the Court grants Defendant UnumProvident's Motion for Summary Judgment with regard to Plaintiff's claim that Defendant UnumProvident engaged in a joint venture with Defendant Unum

Life and that Defendant UnumProvident is the alter ego of Defendant Unum Life.

## B. Plaintiff's Breach of Contract Claims

In her Complaint Plaintiff alleges a breach of contract claim pursuant to O.C.G.A. § 9–2–20, and a bad faith breach of contract claim pursuant to O.C.G.A. § 33–4–6. Plaintiff does not appear to allege that she is a third-party beneficiary of any contract between Defendants in her Complaint. Plaintiff, however, argues in her response to the instant Motion for Summary Judgment that she is a third-party beneficiary of the GSA between Defendants. Plaintiff asserts that Defendant UnumProvident dealt directly with her and that the payment of claims actually benefits claimants, not Defendants, and thus genuine issues of material fact exist as to whether Plaintiff is a third-party beneficiary of the GSA.

### 1. Breach of Contract Claim

■ O.C.G.A. § 9–2–20, regarding parties to actions on contracts, states the following, in relevant part:

(a) As a general rule, an action on a contract ... shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent.

(b) The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.

O.C.G.A. § 9–2–20(a)-(b).

■ Generally, a breach of contract claim may only be maintained against a party to the contract, and an insurance contract is no exception to that general rule. *Equitable Fire Ins. Co. v. Jefferson Standard Life Ins. Co.*, 26 Ga.App. 241, 243, 105 S.E. 818, 819 (1921). "In order for a third party to have standing to en-

force a contract under OCGA § 9–2–20(b) it must clearly appear from the contract that it was *intended* for his or her benefit. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." *Gardner & White Consulting Servs., Inc. v. Ray*, 222 Ga.App. 464, 467, 474 S.E.2d 663, 665 (1996) (internal quotations omitted, punctuation omitted, emphasis in original).

Plaintiff cites *Gardner* for the proposition that a claim administrator may be liable for bad faith under the theory that claimants are third-party beneficiaries to a claims administration agreement. In *Gardner*, a health plan administrator entered into an agreement directly with a county to handle all administrative tasks and decisions associated with the county's self-funded health plan. 222 Ga.App. at 464–65, 474 S.E.2d at 664. A county employee sued the county and the health plan administrator after it denied him benefits. *Id.* On the eve of trial, the county settled its dispute with the employee and agreed to pay damages. *Id.* The only issue remaining was the ability of the employee to recover attorney's fees from the plan administrator for denying him benefits pursuant to O.C.G.A. § 13–6–11. 222 Ga.App. at 465–66, 474 S.E.2d at 664–65.

In *Gardner*, the Georgia Court of Appeals held that the employee was the third-party beneficiary of the administrative agreement, and thus had standing to bring suit based on the plan administrator's alleged failure to exercise it implied duty of good faith and fair dealing in performing its obligations under the agreement. *Id.* The *Gardner* court reasoned that the health plan administrator did not perform its duties for the benefit of the county, but rather, its only function was to determine whether or not county employees were entitled to the health benefits, which they had earned, as each claim was

filed. 222 Ga.App. at 466–67, 474 S.E.2d at 665.

For the following reasons the Court concludes that Plaintiff is not a third-party beneficiary to the GSA and cannot pursue a claim against Defendant UnumProvident under O.C.G.A. § 9–2–20.

First, it is undisputed that Defendant Unum Life issued the Policy to Plaintiff, and Plaintiff does not allege that there is privity of contract between Defendants. Additionally for the reasons discussed *supra* Part III.A., equity does not require that Defendants' corporate forms be disregarded under the circumstances of this case.

Second, it is clear from the GSA that Defendant UnumProvident's performance was to be rendered directly to Defendant Unum Life for Defendant Unum Life's benefit. Unlike the plan administrator in *Gardner*, whose only duty was to determine whether or not employees were entitled to benefits, Defendant UnumProvident provides Defendant Unum Life with a variety of services under the GSA, including facility management, general counsel, auditing, cash management, corporate relations, marketing, and sales management. The fact that Plaintiff benefitted from the performance of the GSA alone is not sufficient to confirm third-party beneficiary status on Plaintiff.

The Court concludes that Plaintiff's Policy is a contract with Defendant Unum Life, that Plaintiff is not a third-party beneficiary to the GSA, and, therefore, Plaintiff cannot pursue her breach of contract claim under O.C.G.A. § 9–2–20 against Defendant UnumProvident. Consequently, the Court grants Defendant UnumProvident's Motion for Summary Judgment with regard to that claim.

### 2. Bad Faith Breach of Contract Claim

■ Plaintiff alleges a bad faith breach of contract claim against Defendants pursuant to O.C.G.A. § 33–4–6. O.C.G.A. § 33–4–6, regarding the liability of an insurer on bad faith refusal to pay claims, states, in relevant part,

[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $ 5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33–4–6(a).

For the following reasons, the Court concludes that Plaintiff cannot maintain a bad faith breach of contract claim against Defendant UnumProvident pursuant to O.C.G.A. § 33–4–6.

First, O.C.G.A. § 33–4–6 only provides for a claim against an insurer. Here, Defendant Unum Life is the insurer under the Policy and, as such, Plaintiff can bring suit against it pursuant to O.C.G.A. § 33–4–6. That statute, however, does not provide for a separate claim against the administrator of an insurance plan, and Plaintiff thus cannot maintain a similar claim against Defendant UnumProvident, as the Policy administrator. Additionally, for the reasons discussed *supra* Part III. A., equity does not require that Defendants' corporate forms be disregarded under the circumstances of this case.

Second, the Court is not persuaded that *Gardner* creates a separate cause of action for bad faith breach of contract against a

plan administrator where an insurer is involved and a plaintiff has recourse through O.C.G.A. § 33–4–6. *Gardner* did not involve an employee suing an independent insurance agency. Rather, the county in *Gardner* created a self-funded health plan and entered into an agreement with a third-party to administer the plan. Unlike the instant suit, *Gardner* did not involve an independent insurer, and thus O.C.G.A. § 33–4–6 was not available to the plaintiff employee. Here, however, Plaintiff may maintain an action for bad faith breach of contract against Defendant Unum Life, as the insurer under the Policy, pursuant to O.C.G.A. § 33–4–6. The Court therefore declines to apply *Gardner* to allow Plaintiff to pursue a claim for bad faith breach of contract against Defendant UnumProvident.

The Court therefore concludes that Plaintiff cannot pursue a bad faith breach of contract claim against Defendant Unum-Provident pursuant to O.C.G.A. § 33–4–6, or as an insurance plan administrator. Consequently, the Court grants Defendant UnumProvident's Motion for Summary Judgment with regard to her bad faith breach of contract claim.

### C. Plaintiff's Claim for Attorney's Fees and Litigation Expenses Under O.C.G.A. §§ 9–15–14 and 13–6–11

■ Defendant UnumProvident argues that Plaintiff has asserted a cause of action for attorney's fees pursuant to O.C.G.A. § 33–4–6, and that Plaintiff may not maintain separate causes of action for those same fees under O.C.G.A. §§ 9–15–14, and 13–6–11. Defendant UnumProvident asserts that O.C.G.A. § 33–4–6 provides an exclusive remedy by which Plaintiff can recovery attorney's fees from an insurance company for an alleged bad faith denial of an insurance claim, and therefore Plaintiff may not recover such fees from Defendant UnumProvident under O.C.G.A. §§ 13–6–

11 and 9–15–14. Defendant UnumProvident also contends that its presence in this case, based solely on Plaintiff's claims for attorney's fees, would lead to an illegal double recovery by Plaintiff on her denial of benefits claim. Plaintiff does not address those issues in her brief opposing Defendant UnumProvident's Motion for Summary Judgment.

■ As an initial matter, the Court observes that Plaintiff's failure to respond to Defendant UnumProvident's argument that it is entitled to summary judgment with regard to Plaintiff's claims for attorney's fees pursuant to O.C.G.A. §§ 9–15–14 and 13–6–11 constitutes Plaintiff's abandonment of those claims. Under Local Rule 7.1 of the Northern District of Georgia, Defendant UnumProvident's Motion for Summary Judgment is unopposed on that ground. *See* N.D. Ga. R. 7.1; *Welch v. Delta Air Lines, Inc.,* 978 F.Supp. 1133, 1137 (N.D.Ga.1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."). In an abundance of caution, however, the Court examines Plaintiff's claims for attorney's fees under O.C.G.A. §§ 33–4–6, 9–15–14, and 13–6–11.

Pursuant to O.C.G.A. § 33–4–6, regarding the liability of insurers for damages and attorney's fees due to bad faith refusal to pay claims, in the event that a finding is made that an insurer refused to pay a policy holder's claim in bad faith, "the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33–4–6.

O.C.G.A. § 9–15–14 also provides for the recovery of attorney's fees and litigation expenses when a party asserts a claim, defense, or other position which completely lacks any substantial justification.

O.C.G.A. § 9–15–14. Similarly, O.C.G.A. § 13–6–11 provides for the recovery of attorney's fees and litigation expenses when the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. *Id.* § 13–6–11. Georgia case law, however, clearly establishes that O.C.G.A. § 33–4–6 is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds, and that claims for attorney's fees and litigation expenses under other Georgia statutes are not authorized. *United Servs. Auto Ass'n v. Carroll,* 226 Ga.App. 144, 148, 486 S.E.2d 613, 617 (1997); *Howell v. So. Heritage Ins. Co.,* 214 Ga.App. 536, 536, 448 S.E.2d 275, 276 (1994).

As previously discussed, Plaintiff may not maintain her claims against Defendant UnumProvident and thus Plaintiff may not obtain attorney's fees and expenses from Defendant UnumProvident in this case. Specifically, for the reasons set forth *supra* Part III.A.-B., Plaintiff may not maintain causes of action against Defendant UnumProvident for joint venturer or alter ego liability, breach of contract, or bad faith breach of contract. Plaintiff therefore has no claims upon which she may seek attorney's fees and expenses against Defendant UnumProvident. Additionally, the Court observes that Plaintiff alleges that Defendants wrongfully denied her claim for benefits under the Policy, and alleges that Defendants are insurers within the meaning of O.C.G.A. § 33–4–6. (Compl.¶¶ 42–85.) Based on Plaintiff's Complaint, O.C.G.A. § 33–4–6 is Plaintiff's exclusive remedy for attorney's fees, and Plaintiff may not recover attorney's fees and litigation expenses under other general penalty provisions, including O.C.G.A.

§§ 9–15–14 and 13–6–11. Consequently, the Court grants Defendant UnumProvident's Motion for Summary Judgment with regard to Plaintiff's claims for attorney's fees and litigation expenses pursuant to O.C.G.A. §§ 33–2–6, 9–15–14, and 13–6–11.

## IV. Defendant UnumProvident's Motion to Strike

Defendant UNUMProvident moves to strike exhibits 11, 18, 19, and 20 from Plaintiff's response to its Motion for Summary Judgment.

For the reasons set forth *supra* Part III, the Court concludes that Plaintiff may not pursue her claims against Defendant UnumProvident in this case, and grants Defendant UnumProvident's Motion for Summary Judgment as to all allegations set forth in Plaintiff's Complaint. Any consideration of the above exhibits will not change the outcome of this Order.[8] The Court therefore finds that Defendant UnumProvident's Motion to Strike is moot. Consequently, the Court denies as moot and without prejudice Defendant UnumProvident's Motion to Strike.

## V. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant UnumProvident Corporation's Motion for Summary Judgment [37] as to all of Plaintiff's claims, and **DISMISSES** Defendant UnumProvident Corporation from this action. The Court also **DENIES AS MOOT AND WITHOUT PREJUDICE** Defendant UNUMProvident's Motion to Strike [55].

---

8. Plaintiff's counsel also has filed an Affidavit of Counsel with Plaintiff's brief in opposition to Defendant UnumProvident's Motion for Summary Judgment. (*See* Aff. of Counsel.) The Court observes that it is generally inappropriate for attorneys to serve as both advocate and witness in the same case. The Court concludes, however, that any consideration of that affidavit would not change the outcome of this Order.