71772. NATIONWIDE MUTUAL INSURANCE COMPANY
v. McCOLLUM.
(347 SE2d 231)

DEEN, Presiding Judge.

The appellee filed this action against the appellant, his automobile insurance carrier, to recover basic and optional "no-fault" benefits allegedly due him under his policy. The trial court granted the appellee's motion for partial summary judgment on the issue of coverage but granted partial summary judgment to the appellant with respect to the appellee's additional claim for a bad-faith penalty, punitive damages, and attorney fees. This appeal is from the former

portion of the court's ruling.

The appellee was injured during the course of his employment as a Class "A" garage serviceman for American Freight Systems, Inc., an interstate trucking company which, as an incident to its trucking business, services its own vehicles. The appellee's job was to see that the company's trucks were roadworthy by checking their fuel, oil, lights, tires, etc. His injury occurred when he slipped on a fuel line while alighting from a truck which he had just driven alongside a fueling dock. To keep from falling, he maintained his grip on a handle attached to the truck's cab and, as a result, wrenched his back, rupturing a disc. The truck's engine was still running at the time.

Although the insurance policy issued to the appellee purported to provide only the minimum required amount of personal injury protection (PIP) coverage, it is undisputed that, at the time the injury occurred, the appellant was obligated by law to extend the appellee optional PIP coverage in the amount of $45,000, due to its failure to obtain from him a written rejection of his right to such coverage. See generally *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712, 715 (300 SE2d 673) (1983). Subsequent to his injury, the appellee, through counsel, asserted a claim for basic and optional benefits, tendering to the appellant a check for the amount of the additional premium required for the optional coverage. The appellant accepted this check and extended the optional coverage; however, after investigating the claim, it subsequently determined that the appellee was entitled to no PIP benefits whatever, due to the applicability of the so-called "repair shop exclusion" set forth in OCGA § 33-34-2 (9). Upon being notified of this determination, the attorney who was then representing the appellee demanded the return of the additional premium which had been paid for the optional coverage; and the appellant complied by sending a refund check, which the appellee subsequently negotiated.

In awarding summary judgment to the appellee on the issue of coverage, the trial court determined that the "repair shop exclusion" was inapplicable, both because the appellee's employer was not in the business of servicing motor vehicles and because the conduct which had given rise to the injury had involved the actual operation of a motor vehicle. The court rejected the appellant's contention that, by demanding and accepting the return of the additional premium previously tendered for the optional PIP coverage, the appellee had manifested an intention to rescind the contract for such coverage. *Held*:

1. Pursuant to the Supreme Court's decision in *Flewellen*, supra, a policy of motor vehicle accident insurance issued subsequent to the effective date of OCGA § 33-34-5 (b) (former Code Ann. § 56-3404b) will automatically be deemed to provide optional PIP coverage unless the right to such coverage has been rejected in writing by the named

insured in accordance with the provisions of that code section. However, the issue before us in this case is not whether the optional coverage was rejected in the first instance but whether the contract for such coverage, which concededly arose from the issuance of the policy without such a written rejection, was later rescinded by mutual consent of the parties.

"The parties to a contract may rescind it by mutual agreement[,] and rescission of a written contract need not be in writing. (Cit.) 'One party to a contract may consent to rescission by the other party either impliedly or by conduct.' (Cit.)" *Cornell Indus. v. Colonial Bank*, 162 Ga. App. 822, 823 (1) (293 SE2d 370) (1982). In our view, the conduct of the appellee in demanding and accepting the return of the additional premium previously tendered for the purchase of the optional coverage cannot reasonably be construed as anything other than a positive expression of intention on his part to rescind the contract for such coverage. We consequently hold that the trial court erred in awarding partial summary judgment to the appellee on the issue of the existence of optional coverage.

2. (a) The trial judge correctly analyzed the applicability of the automobile repair exclusion issue: "In other words, to decide the initial issue of coverage, the court must first determine whether Plaintiff was engaged in a repair service or maintenance business. If so, Plaintiff would still be covered if he was 'actually operating' the truck as a vehicle.

"Only two cases deal with the 'repair shop' exception: *Parker v. Atlanta Casualty*, 157 Ga. App. 539 (1981) and *Southern Guarantee Insurance v. Mouis*, 565 F. Supp. 225 (N.D. Ga., 1982). In *Parker*, the insured was employed by an automobile repair shop and there was no question of whether insured's conduct was within the course of a business of repairing . . . motor vehicles. In *Mouis*, the court, after commenting on the tendency of the Georgia courts to interpret the statute expansively in favor of coverage, stated: 'The Court believes that a Georgia court would hold that the legislature intended the "conduct in the course of a business of repairing" exclusion to apply only to injuries suffered by persons employed in the automobile repair business.'

"This interpretation is in accordance with the natural meaning of the language in the statute which focuses on the nature of the business rather than the nature of the employment. Thus, although Plaintiff was employed as a truck servicer, he was not employed by a truck servicing business. The legislature could easily have altered the language to express lack of coverage for a person employed as a repairer or servicer of motor vehicles but chose to focus on the nature of the business rather than the employee.

"Even if Plaintiff were employed in a repair or service business, it

appears that coverage exists. There is an exemption to the exclusion for 'actual operation of a motor vehicle as a vehicle on business premises.'

"*Parker* appears to focus on two factors: (1) Was the engine still on? (2) Was the vehicle involved in or connected with the injury? In this case, the engine was on and the injury was caused by Plaintiff hanging on to the door as he slipped."

(b) There is no necessity for overruling *Parker v. Atlanta Cas. Co.*, 157 Ga. App. 539 (278 SE2d 119) (1981), as advocated in the dissenting opinion. In that case, this court considered the exclusion contained in former Code Ann. § 56-3402b (h) which defined "operation, maintenance or use," as expressly excluding conduct "within the course of a business of repairing, servicing or otherwise maintaining motor vehicles" unless it also involves the "actual operation of a motor vehicle as a vehicle on business premises." The question to be decided was whether the vehicle, after being driven into the garage, was being operated as a motor vehicle when the plaintiff was leaving it after shutting off the motor. In the opinion, it is recognized that a vehicle may be operated as a motor vehicle without driving it. *Williams v. State*, 111 Ga. App. 588 (142 SE2d 409) (1965). Case law in other jurisdictions holds that when the motor is turned off, the driver alights, and the vehicle moves to injure another party, it is not operated at that time. When, however, the driver alights and leaves the motor running, it has been held that this constituted operation of a vehicle. "In all these cases the vehicle itself was the moving force causing injury . . . there was a zone of connection between what it did and the resulting accident. No such connection appears where the driver *shut off the operating mechanism, alighted, and was injured by an unconnected event.*" *Parker*, supra at 540. (Emphasis supplied.)

3. For the foregoing reasons, we hold that the trial court erred in granting partial summary judgment to the appellee as to the existence of optional PIP benefits, but it correctly held that appellee is entitled to basic PIP benefits.

*Judgment affirmed in part and reversed in part. Carley, Pope, Benham, and Beasley, JJ., concur. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Sognier, J., concur in part and dissent in part.*

BANKE, Chief Judge, concurring in part and dissenting in part.

I concur in Division 1 of the court's opinion but dissent to the court's holding in Division 2 that the so-called "repair shop exclusion" set forth in OCGA § 33-34-2 (9) is not applicable to the present case. The majority's holding in this respect appears to be based on the mere fact that the appellee's injury arose from the operation of a motor vehicle, which it obviously did. In my opinion, however, this

completely begs the question of whether the exclusion applies.

Pursuant to OCGA § 33-34-7, PIP benefits are payable for economic loss resulting from "accidental bodily injury," a term which is defined by OCGA § 33-34-2 (1), in pertinent part, to mean bodily injury "arising out of the operation, maintenance, or use of a motor vehicle. . . ." Pursuant to OCGA § 33-34-2 (9), however, the term " '[o]peration, maintenance, or use of a motor vehicle' . . . does not include conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct . . . involves the actual operation of a motor vehicle as a vehicle on business premises. . . ." Thus, unless an injury arises "out of the operation, maintenance, or use of a motor vehicle," PIP coverage simply does not apply to it at all, regardless of where it occurs; whereas, if the conduct giving rise to the injury "involves the actual operation of a motor vehicle as a vehicle on business premises," the injury is compensable even though it would otherwise be subject to the repair shop exclusion.

In construing the scope of the "as a vehicle" exception the repair shop exclusion, it is appropriate to begin by asking what the Legislature's purpose might have been in enacting the repair shop exclusion in the first place. Only one logical response leaps to mind — to protect automobile insurance carriers from exposure to blanket liability for on-the-job injuries suffered by insureds who make their living by repairing, servicing, or otherwise maintaining motor vehicles, a category into which the appellee's injury in this case clearly falls. Generally speaking, such liability is, of course, more properly the province of workers' compensation coverage than automobile accident coverage. However, regardless of the Legislature's purpose in enacting the exclusion, it is apparent that the "as a vehicle" exception must refer to some form of vehicular operation other than that which is immediately necessary to the performance of repairs, maintenance, or service on the vehicle, for otherwise the exception would virtually gut the exclusion.

It is undisputed in the present case that the insured's job consisted entirely of servicing his employer's fleet of trucks. The fact that he was employed at an "in-house" maintenance facility, rather than one which performed repairs for customers for a fee, does not, in my opinion, provide a logical rationale under such circumstances for determining whether the repair shop exclusion is applicable. The fallacy behind the majority's reasoning in this respect is readily illustrated by applying that reasoning to the facts at issue in *Southern Guaranty Ins. Co. v. Morris*, 565 FSupp. 225 (N.D. Ga. 1982), which the majority erroneously cites as being supportive of its decision. In that case, the repair shop exclusion was held to be inapplicable to an injury suffered by an insured while assisting a mechanic with the repair of his

(the insured's) own vehicle at the mechanic's repair shop. In holding that the injury was compensable, the court reasoned that the statutory language, "conduct in the course of a business of repairing, servicing, or otherwise maintaining motor vehicles" referred only to the conduct of persons *employed* in such a business. Thus, although the business in question quite clearly qualified as a repair shop within the meaning of the statute, the court held that because the plaintiff did not work there the exclusion was not applicable to his claim. Had the court focused on whether the facility performed repairs for the public on a fee basis rather than on whether the plaintiff worked there, then it would have been required to reach the opposite result and to hold that his injury had occurred "in the course of a business" of repairing motor vehicles.

Similarly, I do not believe the fact that the truck's engine was still running when the injury occurred has any logical bearing on whether the exclusion is applicable. Obviously, the fact that the engine was running helps to establish that the injury arose out of the "operation, maintenance, or use of a motor vehicle," but it has no bearing whatever on the question of whether the vehicle was being operated "as a vehicle," rather than merely for the immediate purpose of servicing it. This court's contrary implication in *Parker v. Atlanta Cas. Co.*, 157 Ga. App. 539 (278 SE2d 119) (1981), that the applicability of the repair shop exclusion may in fact be determined, in some instances, by simple reference to whether the vehicle's engine was running when the accident occurred, is, in my opinion, erroneous and should be disavowed.

Because the undisputed facts of the present case establish that the insured was injured while servicing one of his employer's trucks during the course of his employment as a serviceman in a facility devoted to the maintenance, servicing and repair of such vehicles, I would hold that the trial court erred in holding the repair shop exclusion to be inapplicable.

I am authorized to state that Presiding Judge McMurray, Presiding Judge Birdsong, and Judge Sognier join in this opinion.

DECIDED MAY 22, 1986 —
REHEARINGS DENIED JUNE 25, 1986 — 

*William A. Dinges, William D. Strickland*, for appellant.
*Charles E. Buker III*, for appellee.