**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
http://www.gaappeals.us/rules/

July 15, 2014

# In the Court of Appeals of Georgia

A14A0245. THOMPSON v. LOVETT.

BRANCH, Judge.

Russell Eric Thompson appeals entry of summary judgment against him in a suit on a note. We hold that the trial court erred in concluding that the statute of frauds and the statutory requirement of unanimous action by personal representatives of an estate bar Thompson's defenses, and we therefore reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of Thompson, the record shows that, on February 15, 2003, Thompson purchased his father's residential property in Loganville. The transaction is evidenced by a warranty deed, a $250,000 promissory note, and a related deed to secure debt/security agreement. The promissory note provides that, beginning on March 15, 2003, Thompson would pay his father 107 monthly installments of interest in the amount of $833.33, followed by a balloon payment of $250,833.33 on February 15, 2012. Since the purchase, Thompson has resided at the property, maintained it, and paid the insurance and taxes. Thompson's sister, Carrie Laann Thompson Lovett, owns and resides on the adjoining property along with her children.

Thompson's father died on March 12, 2004.[1] Pursuant to his will, Thompson and Lovett were named as co-executors, and they were each devised the remainder (i.e. all property other than personal effects and certain itemized property not relevant to this case) of their father's estate "equally, share-and-share alike, in fee simple, per stirpes." Shortly after their father's death, according to Thompson, the parties entered into an oral agreed that Thompson described as follows:

---

[1] Sometime before his death, Thompson's father told Thompson that he did not have to continue making payments under the note, and Thompson ceased making payments in August 2003. Neither party places any relevance on this event.

> Ms. Lovett and I agreed that instead of making monthly mortgage payments under the Promissory Note to my father's Estate, for which we were co-executors, we would wait until Ms. Lovett's children had grown up and moved out of her home, and then sell the Property . . . . Ms. Lovett and I agreed that we would equally split the proceeds of the sale.

Lovett denies that she entered into this oral agreement.

On March 20, 2012, eight years after the parties made the alleged oral agreement, Lovett, as executor of the estate and acting through counsel, sent a letter to her brother demanding that he pay to the estate the remaining balance due on the note, which amounted to $334,999.60. She also initiated proceedings to remove Thompson as co-executor, and he later resigned pursuant to a consent order. One year after the demand letter, Lovett, as executrix of her father's estate, filed suit on the note on behalf of the estate and claimed that the debt due had increased to $349,165.95 plus $49,374.89 in attorney fees. In his answer, Thompson denied Lovett's claims and raised several defenses. Lovett then moved for summary judgment, which, following a hearing, the trial court granted.

Thompson admits that but for the alleged oral agreement between the parties, he would be obligated to pay the balance on the note. He raises several arguments as to why the alleged oral agreement raises an issue of fact as to his liability under the

3

note. Lovett counters that Thompson's defenses are invalidated by the terms of the note itself and by the statute of frauds.

The one-page promissory note contains an acceleration clause which provides that if Thompson fails to pay any installment when due or fails to comply with any term of the deed to secure debt and security deed, the entire unpaid principal sum with all accrued interest shall become due and payable at the option of the note holder. The note then provides:

> It is further agreed that failure of the Holder to exercise this right of accelerating the maturity of the debt, or indulgence granted from time to time, shall in no event be considered a waiver of such right of acceleration or estop the Holder from exercising such right.

The note also provides for interest and attorney fees if the note has to be accelerated.

The trial court concluded, in part, that because Georgia law requires that modifications of "[a]ny contract required to be in writing by the statute of frauds" must also be in writing, and because the alleged agreement purported to be an oral modification of such a contract, the factual issue raised regarding the alleged agreement was immaterial because any such agreement would be ineffectual. Thompson contends that the alleged oral agreement creates a genuine issue of material fact with respect to both the enforceability of the note and his defense of estoppel.

4

Thompson claims that the trial court erred because the alleged agreement was a rescission, not a modification, and because exceptions to the statute of frauds are applicable in this case. We find that the trial court erred in concluding that the statute of frauds and the requirement of unanimous action by personal representatives of an estate undermine the materiality of this factual issue to this dispute.

1. Georgia's statute of frauds requires that "[a]ny contract for sale of lands, or any interest in, or concerning lands" and "[a]ny agreement that is not to be performed within one year from the making thereof" be reduced to writing and signed if it is to be binding. OCGA § 13-5-30 (5). Thus the original promissory note held by the parties' father's estate was required to be in writing. See, e.g., *Sierra Assoc., Ltd. v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 169 Ga. App. 784, 789 (2) (a) (315 SE2d 250) (1984) (because "alleged verbal contract [concerning extension or renewal of promissory note] was not to be performed within one year, it came within the Statute of Frauds") (citations omitted). And generally, parole agreements to modify a contract required to be in writing by the statute of frauds are ineffective. See *Brooks v. Gwinnett Community Bank*, 311 Ga. App. 806, 807 (717 SE2d 647) (2011).

Nevertheless, "parties to a contract may rescind it by mutual agreement and rescission of a written contract need not be in writing." *Cornell Indus. v. Colonial*

5

*Bank*, 162 Ga. App. 822, 823 (1) (293 SE2d 370) (1982) (citation omitted); see *WorksiteRx v. DrTango*, 286 Ga. App. 284, 285 (648 SE2d 775) (2007). In *WorksiteRx*, this Court found that an affidavit filed by the defendant to a contract suit claiming that the parties had previously made an oral agreement to rescind their contract was sufficient to raise an issue of material fact precluding an award of summary judgment to the other party. Id.; see also *C. Brown Trucking Co. v. Henderson*, 305 Ga. App. 873, 874 (1) (700 SE2d 882) (2010) (reversing a grant of summary judgment where a party's verified answer raised a factual issue as to whether the parties had orally rescinded the contract).

Similarly here, Thompson has averred that an oral agreement between him and his sister effectively rescinded the entire transaction under which he was purchasing the home, which is sufficient to create an issue of fact as to rescission. Construed in his favor, the alleged oral agreement unwinds the entire transaction between Thompson's father to Thompson. The brother and sister allegedly agreed that Thompson could cease payments on the note and that Thompson would later sell the property and split the proceeds with his sister. The same result would have occurred if Thompson had deeded the property back to the estate at the time of the alleged oral agreement to rescind; that is, the estate would have owned the property and the brother

6

and sister could then, acting as co-executors and the sole beneficiaries of the property, sell the house and split the proceeds.

Also, a party "may consent to rescission by the other party either impliedly or by conduct." *Nationwide Mut. Ins. Co. v. McCollum*, 179 Ga. App. 500, 502 (1) (347 SE2d 231) (1986) (citation and punctuation omitted). In *McCollum*, this Court found that an insurance customer's conduct in demanding and accepting the return of a previously tendered premium for certain coverage manifested an intent to rescind the contract for that coverage, even though there was no explicit agreement to rescind. Id. Here, Lovett's failure to request repayment on the note or object in any manner to over eight years of known inaction by Thompson is consistent with Thompson's claim of an agreement to rescind the original transaction. Lovett claims that the alleged agreement should be considered a modification and not a rescission, and that precedents involving rescissions therefore do not apply to take the alleged agreement out of the statute of frauds. But as shown above, construed in Thomson's favor, the agreement was a rescission and summary judgment is therefore precluded.

Thompson also argues that even if the agreement were seen as a modification, an exception to the statute of frauds applies. See OCGA § 13-5-31 (3) (statute of frauds inapplicable "[w]here there has been such part performance of the contract as

would render it a fraud of the party refusing to comply if the court did not compel a performance"). Because we find that the alleged oral agreement, if construed in favor of Thompson, is a rescission, we need not reach this argument.

For the above reasons, the trial court erred in finding, as one basis for summary judgment, that the agreement was a modification that had to be in writing in order to be enforced. A material issue of fact remains, therefore, as to whether the parties entered into an oral agreement to rescind the transaction.

2. In granting summary judgment, the trial court also held that "there is no evidence that the parties acted unanimously as Co-Executors to extinguish the debt, as required by law." Georgia law allows heirs to make their own agreements regarding property devised under a will:

[A]greements among the heirs at law to distribute or divide property devised under a will, in lieu of that manner provided by the will, are valid and enforceable. Such agreements have as their consideration the termination of family controversies, and are upheld albeit perhaps resting on grounds which would not have been satisfactory if the transaction had occurred between mere strangers. They partake of the nature of family arrangements and are, in essence, solely contractual and governed by rules applicable to all contracts.

8

*West v. Downer*, 218 Ga. 235, 241 (5) (127 SE2d 359) (1962) (citations and punctuation omitted); see also OCGA § 53-7-45 ("Personal representatives are authorized to compromise, adjust, arbitrate, assign, sue or defend, abandon, or otherwise deal with or settle debts or claims in favor of or against the estate.").[2] Georgia law also provides, however, that if an estate has "more than one personal representative," "unless the will provides otherwise[,] [t]he personal representatives must act by their unanimous action[.]" OCGA § 53-7-5 (a).

The trial court correctly stated the law, but it incorrectly found that the alleged agreement, if it happened, did not constitute "unanimous" action by Thompson and Lovett in compromising a debt in favor of their father's estate. At the time of the alleged oral agreement, Thompson and Lovett were the sole co-executors of their father's estate and the sole beneficiaries of the remainder of the estate, including the promissory note; they were also the only parties to the alleged oral agreement. Contrary to the trial court's statement that "there is no evidence that the parties acted unanimously" in agreeing to cancel Thompson's debt in favor of an alternate arrangement, the facts construed in Thompson's favor show a unanimous decision by

_____

[2] "'Personal representative' means any administrator, administrator with the will annexed, county administrator, or executor." OCGA § 53-1-2 (12).

9

the parties to do just that. Thus, just as the statute of frauds does not preclude the possibility of judgment in Thompson's favor, so the requirement of unanimous action cannot be invoked to justify summary judgment in favor of Lovett, as long as the factual issue concerning the alleged oral agreement remains unresolved.

3. Thompson also contends that the alleged oral agreement creates a genuine issue of material fact with respect to the existence of estoppel. Because we find that the trial court erred in failing to address Thompson's affirmative defense of estoppel, and that there are genuine issues of material fact regarding whether estoppel exists in this case, we agree.

In order to make out a claim or defense of estoppel, the party claiming estoppel "must show that (1) the promisor made certain promises; (2) the promisor should have expected that the party would rely on the promises; and (3) the party relied on those promises to its detriment." *F & W Agriservices v. UAP/Ga. Ag. Chem.*, 250 Ga. App. 238, 241 (2) (549 SE2d 746) (2001) (footnote omitted) (citing OCGA § 13-3-44 (a)). See also *20/20 Vision Ctr. v. Scott Hudgens Companies*, 256 Ga. 129, 135 (7), n. 7 (345 SE2d 330) (1986) (estoppel can be applied even when facts supporting estoppel are insufficient to constitute partial performance of a contract thereby taking the case out of the Statute of Frauds). In *F & W Agriservices*, this Court determined that the

10

trial court had erred in finding that the appellant's estoppel defense was "without merit as a matter of law." Id. at 242 (2). The Court instead determined that factual issues remained with respect to whether the appellee had in fact made the alleged promise, whether the promisor should have expected reliance on that promise, and whether the appellant had in fact reasonably relied on that promise. Id. Similarly, on the record before us, factual issues remain as to whether Lovett represented to Thompson that he could continue to reside on the property without payment and without fear of enforcement of the note, and as to whether Thompson reasonably relied on that representation to his detriment (i.e. by exposing himself to additional liability, such as attorney fees associated with Lovett's attempt to collect on the note).

Lovett argues that the terms of the note preclude application of estoppel as a defense. But the only applicable term of the note is quoted above, and it only provides that any failure by Lovett to exercise her right to accelerate the note or any indulgence granted by her shall not constitute "a waiver of such right of acceleration or estop the Holder from exercising such right." Here, Thompson is not claiming that Lovett failed to exercise her right to accelerate the note or that she granted him an indulgence; he claims that she agreed to rescind his obligation under the note. The quoted term does

11

not prohibit rescission of the note, and it is therefore inapplicable to the facts as construed in Thompson's favor.

4. Finally, because we have found that the trial court erred by granting summary judgment, we need not address Thompson's remaining assertions that Lovett failed to pierce or address Thompson's affirmative defenses.

For the reasons set forth above, we reverse the trial court's grant of summary judgment to Lovett and remand for further proceedings.

*Judgment reversed. Barnes, P. J., and Boggs, J., concur.*